7039

STATE *EX REL.* PEOPLE'S BANK OF GREENVILLE v. GOODWIN, COUNTY SUPERVISOR.

1. COUNTY SUPERVISOR.—MANDAMUS will not lie to compel a county supervisor to draw his warrant against the county treasurer for indebtedness contracted in a previous fiscal year, especially when the county treasurer is without funds to pay such claim; nor to require such officer to levy a special tax to pay such claim; but the board of county commissioners may be required by mandamus to include in its estimate to the Legislature for county expenses an indebtedness created in a previous fiscal year, previously audited and approved by the county board.

2. COUNTIES.—ACTION OF COUNTY BOARD OF COMMISSIONERS in approving or disallowing a claim against the county is an adjudication, and such adjudication is not affected by the conclusions of an investigating committee appointed by the Legislature that such claim is fraudulent, and such approval is an adjudication of the fact that the contract out of which the claim arose was not in excess of the tax levy for that purpose.

3. IBID.—IBID.—JURISDICTION.—Under section 806 of Code of 1902 the county board of commissioners have no jurisdiction to audit and approve a claim against the county unless itemized and sworn to. How such claims should be itemized indicated.

Petition in the original jurisdiction of this Court by People's Bank of Greenville for writ of mandamus against J. P.

Goodwin, County Supervisor, *et al.,* to require him to issue his warrant against the county treasurer for certain claims.

*Mr. J. A. McCullough,* for petitioner.

*Messrs. Oscar Hodges* and *H. P. Haynsworth,* contra.

November 16, 1908.    The opinion of the Court was delivered by

MR. JUSTICE WOODS.    In this petition for mandamus, the People's Bank of Greenville alleges it purchased for valuable consideration and without notice of any defects, if any exist, a number of claims, listed in the petition, against the County of Greenville, which had been audited and approved by the county board of commissioners. The petition further alleges : "That although the county had and now has funds applicable to the payment of the said claims, J. W. Walker, county supervisor, and being the predecessor of the present incumbent, and the old board of county commissioners, refused to take any steps towards paying the said claims, but denied the validity thereof, and the present respondents, after demand made upon them, refuse to take any steps towards the payment of the said claims, and J. P. Goodwin, county supervisor, refuses, after demand made upon him, to draw his order or warrant upon the county treasurer upon the funds in his possession applicable to the said claims, or any of them, and the respondents, after demand upon them, have failed and refused to do the acts required of them by law, looking towards the payment of the said claims, or any of them, and they deny the validity of the said claims, or that the county, if liable on account thereof, and the county commissioners of Greenville county refuse to levy a tax to pay the said claims, or any part thereof, as they are required by law to do, and they further refuse to include the said claims, or any part of them, in the budget of expenses incurred for ordinary county expenses and report the same to the Comp-

troller-General of the State, by him to be submitted to the General Assembly, in order to provide the necessary taxation for county purposes, and they have attempted to repudiate the said claims, and have refused, and still refuse, to take any action whatsoever, looking towards the recognition and payment thereof." The prayer is: 1. "That J. P. Goodwin, county supervisor, be required to draw his order or warrant upon the county treasurer for such funds as may be in his hands, applicable to the said claims, or any of them.

2. "That the board of county supervisors of the said county be required to levy a tax in payment of the said claims.

3. "That the said board of county commissioners be required to include in the budget, or estimate of the amount of money necessary to pay the expenses incurred by the said board and for ordinary county expenses, the claims aforesaid, and report the same to the Comptroller-General of the State, to be by him submitted to the General Assembly in order that their payment may be provided for.

4. "That the respondents, and each of them, be required to do any and all acts required of them by law looking towards the recognition and payment of the said claims.

5. "For such other and further relief as petitioner may be entitled to. * * *"

The return shows there are no funds in the hands of the county treasurer applicable to the claims set out in the petition, which are for past indebtedness; and section 609 of the Civil Code prohibits the respondents, as public officers, from applying the funds arising from the taxes for the current year to the payment of indebtedness contracted in any previous fiscal year. Section 809 of Civil Code forbids the supervisor to draw checks unless the county treasurer "has reported funds in the treasury to pay the same;" and it forbids the county treasurer to pay checks drawn in violation of its provisions. There is, therefore, no ground to ask for mandamus to require the issuing and pay-

ment of a check for the amount of petitioner's claims.   By
article X, section 5, of the Constitution, the General Assem-
bly was authorized to vest in the municipal authorities of a
county the power to lay taxes for corporate purposes, but
the General Assembly has not seen fit to confer the power
on the county board of commissioners, except a limited
power, to lay a special tax of one mill for roads—23 Stats.,
1012.   Therefore, this Court cannot issue a mandamus to
require that board to do an act not within its official duty or
power.   In *Supervisors* v. *U. S.,* 18 Wall, 71, 77, 21 L.
Ed., 77, the Court says: "It is very plain that a mandamus
will not be awarded to compel county officers of a State to
do any act which they are not authorized to do by the laws
of the State from which they derive their powers.   Such
officers are the creatures of the statute law, brought into
existence for public purposes, and having no authority be-
yond that conferred on them by the author of their being.
And it may be observed that the office of a writ of man-
damus is not to create duties, but to compel the discharge
of those already existing.   A relator must always have a
clear right to the performance of a duty resting on the
defendant before the writ can be invoked.   Is it, then, the
duty of the board of supervisors of a county in the State of
Iowa, to levy a special tax, in addition to a county tax of
four mills upon the dollar, to satisfy a judgment recovered
against the county for its ordinary indebtedness?   The
question can be answered only by reference to the statutes
of the State."   *U. S.* v. *County of Clark,* 96 U. S., 217, 24
L. Ed., 629; *U. S.* v. *County of Macon,* 99 U. S.,
582, 25 L. Ed., 331.   It is true, the principle thus stated in
*Ralls* v. *U. S.,* 105 U. S., 733, 735, 26 L. Ed., 1220, has been
generally recognized and followed: "It must be considered
as settled in this Court, that when authority is granted by
the legislative branch of the government to a municipality or
. a subdivision of a State, to contract an extraordinary debt
by the issue of negotiable securities, the power to levy taxes

sufficient to meet, at maturity, the obligation to be incurred, is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention. The power to tax is necessarily an ingredient of such a power to contract, as ordinarily, political bodies can only meet their pecuniary obligations through the instrumentality of taxation." *U. S. v. Clark Co., supra; Quincy* v. *Jackson,* 113 U. S., 337, 28 L. Ed., 1083; *Scotland Co.* v. *Hill,* 140 U. S., 44, 35 L. Ed., 353. But this principle has no application here, because the claims here are not extraordinary debts, but ordinary county claims for current expenses of the class for which the General Assembly undertakes to provide by a direct legislative levy. *City of Cleveland* v. *U. S.,* 111 Fed., 341. Besides, it will be found in all the cases above cited, in which the power and duty to levy a tax to pay a debt has been implied from the authority to make the debt, the officers to whom such power and duty have been attributed were authorized by law to levy taxes, for the general purposes of the municipality. For the courts to undertake to create the machinery of taxation would be to usurp a legislative function. This Court, therefore, has no power to issue a mandamus to require the levy of a special tax to pay the petitioner's claims.

But the petition alleges the claims, now in controversy, against the county having been approved by the county board of commissioners, the Court should issue its writ of mandamus requiring the board to include the claims in its estimate to be submitted under section 799 of Civil Code, which reads as follows: "The county board of commissioners shall prepare an estimate of the amount of money necessary to pay the expenses incurred by the said boards and for ordinary county expenses, and report the same to the Comptroller-General of the State, on or before the 5th day of January of each year, to be by him submitted to the General Assembly, in order to provide the necessary taxation for county pur-

poses." This section was clearly intended to embrace past indebtedness. The purpose of the estimate is to enable the General Assembly "to provide the necessary taxation for county purposes;" and taxation is as essential for the payment of past indebtedness as for payment of current expenses. But it is not necessary to resort to the spirit of the act. By its express language, the section requires: "An estimate of the money necessary to pay the expenses incurred by said boards, and for ordinary county expenses." The expenses already incurred by the board clearly embrace all claims legally approved by the board up to the date of the estimate. Ordinary county expenses are those to be incurred for the current fiscal year.

The respondents, however, allege these claims should not be included in the estimate required by the statute: (1) because a number of the claims were fraudulent, and the rest for other reasons affecting the merits, were not valid against the county; (2) because the claims exceeded the appropriation and the tax levied for the year in which they are alleged to have been incurred; and (3) because they were approved by preceding county boards of commissioners without being itemized and verified. As to the merits of the claims, it is well settled by a number of decisions of this Court that the action of the county board of commissioners in approving or disallowing a claim against the county, presented in such form as to give the board jurisdiction, is an adjudication. *Richland* v. *Miller,* 16 S. C., 236; *State* v. *Kirby,* 17 S. C., 565; *Jennings* v. *Abbeville,* 24 S. C., 543; *State* v. *Appleby,* 25 S. C., 103; *Kendall* v. *County Commissioners,* 28 S. C., 258, 5 S. E., 622; *Tinsley* v. *Union County,* 40 S. C., 281, 18 S. E., 794; *Lockwood* v. *Adams,* 63 S. C., 191, 41 S. E., 82. No doubt such a judgment may be set aside for fraud by a direct proceeding instituted for that purpose. *Farrow* v. *Dial,* 1 McM., 292; *Brown* v. *Buttz,* 15 S. C., 488; *Lockwood* v. *Adams,* and *Richland* v. *Miller, supra.* But it is not affected

by the conclusions of an investigating committee that the claim upon which it rests is invalid for fraud or any other reason. *Wheeler* v. *County,* 18 S. C., 135; *State* ·v. *Appleby, supra.* The finding of the investigating committee appointed under the Act of 1905 (24 Stat., 1109), as to the merits of the claims can have no effect. Indeed, the act confers on the committee no power except to investigate. No proceeding has been instituted to set aside the approval or audit of the claims for fraud, and mandamus could not be refused for lack of merit in the claims.

In support of the second objection, the respondents rely on section 606 of the Civil Code, and similar provisions in the appropriation acts of 1903 and 1904. Section 606 provides: "It shall be unlawful for any public officer, State or county, authorized by law to so contract, to enter into or contract, for any purpose whatsoever, in a sum in excess of the tax levied, or the amount appropriated for the accomplishment of such purposes." When a claim is presented to a county board of commissioners, one of the questions for consideration of the board is, whether it rests upon a contract in excess of the tax levied or the amount appropriated for the purpose under which the claim falls. This is not a question of jurisdiction, but of fact, between the claimant and the county, to be determined on the consideration of the claim. In approving the claim, the board necessarily adjudicates that question in favor of the claimant.

But it is alleged in the return that under the statute, the county board of commissioners has jurisdiction to audit and approve claims against the county only when they are itemized and verified, that the claims here in controversy were not itemized and verified as required by law. and, therefore, the attempted audits and approvals were nullities. The relator traverses the return, alleging that the claims were duly itemized and verified. The relator further takes the legal position that even if the claims were not itemized and verified, the defect was not jurisdictional,

and that it was within the power of the county board of commissioners to waive or dispense with these formalities. Section 806 of the Civil Code provides: "No accounts shall be audited, and ordered to be paid by the county board of commissioners for any labor performed, fees, services, disbursements, or any other matter, unless it shall be made out in items and accompanied with an affidavit attached thereto, and made by the person or officer presenting or claiming the same, that the said items are correct, and that the labor, fees, disbursements, services, or other matters charged therein have been in fact done, made, rendered or are due, and that no part of the same has been paid or satisfied. And the clerk of the court, the sheriff and magistrate shall declare further, on oath, that the costs in such cases have not been recovered out of the defendants, and that the defendants are unable to pay costs; and also, that the fines and penalties heretofore collected by them have been faithfully and fully paid over to the county treasurer. In every case the magistrates shall exhibit the original papers in which costs have accrued. Nothing in this section shall be construed to prevent the board from disallowing any account, in whole or in part; when so rendered and verified, if it appears that the charges are incorrect or that the services or disbursements have not, in fact, been made or rendered, nor from requiring any other or further evidence of the truth or propriety thereof. No allowance or payment beyond legal claims shall ever be allowed. And the board may refuse to audit or allow any claim or demand whatsoever, unless made out and verified in the manner herein specified. No fees shall be paid by the county commissioners for the proof of any claim or claims presented to them against their respective counties. All public officers are required to probate without compensation all claims against their respective counties."

There is some confusion in the verbiage, in that the first part of the section explicitly forbids the county board of commissioners to audit or order to be paid claims of any

sort against the county, unless made out in items and verified in the manner set forth; while in another sentence, it is provided the board *may* refuse to audit or allow a claim, unless made out and verified in the manner required. If the provision authorizing, but not enjoining the board to require itemizing and verification stood alone, there would be strong reason for the implication that the board might dispense with these formalities; but there is no room for such implication when the former part of the same statute expressly exacts that they shall not be dispensed with. There are very strong practical reasons of public policy for regarding the enactment mandatory and not directory. The items and oath are required not only that the county board of commissioners may be satisfied with the account, but that the board and its successors in office, as well as the grand jury and the citizens at large may, by examination of the claims, ascertain how the affairs of the county have been conducted. If it be within the power of the county board of commissioners to audit and approve claims not made out with items and verification, it would be within their power to allow claims so made out as to give no information as to their origin and character, and thus keep those officially concerned for the welfare of the county and the citizens generally in complete ignorance of the management of public works and the appropriation of the public revenue. There are some expressions in *Myers* v. *Appleby,* 25 S. C., 103, indicating the inclination of Mr. Justice McGowan to entertain the opinion that an audit and approval, though irregular for lack of items and verification, would be binding on the county. But the mandamus there asked for was refused and the majority of the Court concurred in the result only. These expressions in the opinion are, therefore, not controlling under the principle of *stare decisis,* though, of course, they are entitled to great consideration as the views of an eminent and learned Judge. On the other hand, in the later case, *Green* v. *County Com's,* 27 S. C., 9, 14, 2 S. E., 618, we find this

language used by the Court, tending strongly to sustain the conclusion we have reached that the lack of itemizing and verification is a jurisdictional defect: "If the claim had been allowed and a warrant for its payment issued. it would have become a part of the records of the office of the county commissioners, and ought to show on its face such facts as would make a proper charge upon the county; whereas, in its present form it shows nothing of the kind." Being an inferior tribunal, the facts necessary to give the county board of commissioners jurisdiction must appear on the record; and if they do not appear its judgment may be treated as a nullity wherever encountered. *Devall* v. *Taylor,* Cheves, 5; *McColl* v. *Cohen,* 13 S. C., 198.

In determining whether the claims were itemized and verified as required by law, substantial, and not technical and precise compliance with the letter of the statute should be the test. The members of county boards of commissioners, as well as the persons with whom they deal, are not usually learned in the law nor accustomed to technical accuracy, and, therefore, it could not have been contemplated that anything more than such substantial compliance with the statute as would meet the purpose in view should be necessary to the jurisdiction of the board.

Those claims for work done on bridges must be considered in view of another statute, section 1354 of Civil Code, which requires: "All work on bridges given out by the county supervisor, when the amount shall exceed the sum of ten dollars, shall be done by contract. When the amount shall exceed the sum of one hundred dollars, the county supervisor is hereby required to advertise the same in at least one of the papers of the county; said proposal shall in all such cases be accompanied by two or more sufficient sureties. When the amount is less than one hundred dollars, and is over ten, he is hereby required to advertise the same by posting a notice in three public places, one of which must be at the place where the work is to be done; said notices to be

posted ten (10) days prior to the day on which the work is to be let, and the county supervisor shall have the right to reject any or all bids if in his judgment the interest of the county so requires." The question is not involved here, whether one who bids and contracts in pursuance of his accepted bid with the county supervisor for work on bridges under this statute is bound to see that all the requirements of the statute as to advertisements are followed. But it is certainly a condition of the power or jurisdiction of the county board of commissioners to allow his claim that a contract should be in existence; for the language of the statute is mandatory and not permissive, as it was in the statute construed in *Dillingham* v. *Spartanburg,* 75 S. C., 549, 56 S. E., 232; and a claim presented under such a contract is not properly itemized unless the contract is so referred to that it may be identified.

It is to be further borne in mind, in deciding whether claims are properly "made out in items," that section 808 of Civil Code provides: "No claim against any county of this State shall be valid and payable unless the same be presented to and filed with the county board of commisisoners of such county during the fiscal year in which it is contracted or the next thereafter." Reading this statute and section 806 together, it seems clear that no claim can be said to be "made out in items" which does not indicate at least the year in which it arose, so as to inform the county board of commissioners, and others concerned, whether the claim arose within the period limited by the statute.

To itemize an account means to state in detail the particulars of it, so that the account may be examined and its correctness tested. When merely the different articles furnished or the different services rendered are set down without dates, one of the most important particulars necessary to the examination of the account is omitted. Especially is this true when the board whose duty it is to examine into the

correctness of the account is limited to the consideration of claims arising within the current or preceding year.

It remains to consider the accounts in detail and determine whether they were presented in such form that the county board of commissioners had jurisdiction to audit and adjudge them valid claims against the County of Greenville.

The verification of all the claims, as appears by affidavits of former clerks of the county boards of commissioners, is in the following form, with slight variations, furnished by the successive boards and in general use since 1885:

"State of South Carolina, County of Greenville. Personally appeared before me,           , and made oath in due form of law, that the above account is correct, just and due for           dollars, and that no part thereof has been paid. Subscribed and sworn to, this           day of           , A. D. 190           (L. S.)    Notary public for S. C."

While a mere explicit following of the words of the statute would have been better, the verification is a substantial compliance with the statute.

Under the conclusions stated as to the meaning of the statute requiring accounts against the county to be "made out in items," the following accounts as enumerated in the petition were presented so itemized and verified as to give the county board of commissioners jurisdiction to audit and approve them, and the audit and approval of the board made them judgments against the county: Number 24, for $33.50; number 25, for $44; number 26, for $48.10. The same is true as to the first three charges on account, number 7, amounting to $300.95, less a payment of $173.35. On this last account, it is true the dates of the sale of lumber are not set down in the body of the account, but the bills of lading attached show the date of the shipment. The claim of W. M. Miller for a balance of thirty-one dollars, and the claim of J. M. King for ninety-eight dollars, numbered, respec-

tively, 3 and 17, in the petition, have been lost.    Affidavits as to these claims have been submitted without objection, and counsel for respondents have filed a written statement saying as to these claims, "we will not insist upon any other invalidity in the form of the claims than such as may be disclosed by Mr. McCollough's petition for mandamus." ' The petition described both claims as itemized, verified and approved, and, therefore, they are to be regarded as judgments against the county.

The petitioner is, therefore, entitled to a writ of mandamus requiring the county board of commissioners of Greenville county to include in its estimate to be submitted to the General Assembly these claims and items as adjudicated debts for expenses incurred by the county board of commissioners, and it is adjudged that the writ do accordingly issue.

At to all the other claims, the petition for the writ of mandamus is denied.    In these other accounts, the charges for bridges are all over ten dollars and refer to no contract; one of the accounts was not verified before an officer; some of the charges for labor, and for lumber and other articles furnished may be sufficiently specific, but others are quite indefinite, giving no information as to their origin.    The fatal objection to them all is, that no date—not even the year—is given when the service was rendered or the article furnished to the county.

It is hardly necessary to say this judgment does not affect the right of the County of Greenville to assail the judgments of the county board of commissioners for fraud by a direct proceeding, nor does it affect any right the petitioner may have to present any of the claims to the county board of commissioners of Greenville county in the form required by law for their audit and approval.