## 15372

### FOSTER v. MALLORY ET AL.

(18 S. E. (2d), 740)

August, 1941.

*Mr. H. K. Osborne* and *Mr. Thomas B. Butler,* both of Spartanburg, for appellants,

*Messrs. Odom, Bostick & Taylor,* and *Mr. L. G. Southard,* all of Spartanburg, for respondent,

February 11, 1942.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON.

The respondent, Dewey D. Foster, was formerly the Judge of Probate for Spartanburg County. Prior to the year 1922, the Probate Judges of that county received the fees and costs provided by law, and paid for clerical help and for certain other expenses for the operation of the office.

In 1922, the General Assembly passed an Act, the part of it relating to Spartanburg County now being Section 4770 of the Code, providing a salary for the Probate Judge of that county in lieu of fees of whatever nature or description, and clerical help in the sum of $1,200.00, to be paid to *bona fide* clerks; all fees to be collected by the officer and turned over to the county treasurer.

Pursuant to this Act, which became effective January 1, 1923, the legislature in enacting the county supply bill for 1923 included, for the first time, a provision for the payment of a salary to the Probate Judge, and for the payment of clerical help in his office. In each annual supply bill thereafter varying amounts have been appropriated as salary for the Probate Judge and for his clerical assistance.

This action was commenced by the respondent on June 16, 1938, to recover the sum of $18,141.91, representing the difference between the amount of the fees alleged to have

been collected by the county during the six years immediately preceding the institution of the suit and the amount of salary paid to the plaintiff as Probate Judge during that period; and it was alleged that the act of the legislature taking away his fees was invalid as being in conflict with Article 3, Section 34, of the Constitution.

In their amended answer the defendants set up six defenses, but we are here concerned with the second and the sixth defenses only.

We shall take up, now, the second defense.

This defense alleges, among other things, that the defendants are entitled to an offset, against the fees and costs, for clerk hire and general office expenses for plaintiff's own benefit or the benefit of his office; that practically all the matters handled through the office of the plaintiff and embraced within this action were performed by subordinate clerks in the office, whose salary was paid by the county; that the clerk hire and office expenses for the period in question amounts to $12,879.96; that prior to the passage of the salary act of 1922, the clerk hire and office expenses were paid by the Probate Judge; and that the plaintiff received the benefit of such sums as were paid by the county for clerk hire and other office expenses of the Probate Court which the plaintiff would have been required to pay under the fee system and but for the enactment of the salary statute, and that to the extent that it may be determined that plaintiff was relieved of paying clerk hire and office expenses during such period, if he had paid for them personally, defendants are entitled to an offset; and that the duties and work of the Probate Court for Spartanburg County are such that it would have been necessary, if the salary statute and county payment of clerical help and other expenses had not been enacted and provided, for the Probate Judge to have employed assistants and to have expended other sums from his own funds, and that for these reasons the defendants are entitled to such offset as represents the amounts the plain-

tiff would have been required to pay for the proper operation of the office.

To this defense the plaintiff demurred, on the ground that it appears upon the face of the answer that no facts are alleged giving to the defendants a right of offset, and that consequently no valid defense is stated. The demurrer was heard by his Honor, Judge T. S. Sease, and he passed an order sustaining it.

The point is not contested by the county, that in depriving the respondent of his fees and costs the salary Act is unconstitutional, being in conflict with Article 3, Section 34, of the Constitution. *Salley v. McCoy*, 182 S. C., 249, 189 S. E., 196; *Hudson v. Pickens County*, 190 S. C., 490, 3 S. E. (2d), 603.

Nor is any question made by the respondent as to the county's right of offset with respect to his salary, that being conceded under the cases of *Gamble v. Clarendon County*, 188 S. C., 250, 198 S. E., 857, and *Ridgill v. Clarendon County*, 192 S. C., 321, 6 S. E. (2d), 766.

The real question before us is: Is the county entitled to offset, against respondent's claim for fees and costs, the amounts paid by the county for such clerk hire and office expenses as were actually necessary to the proper operation of the Probate Court, and which the respondent himself would have had to pay but for the passage of the invalid salary Act?

In the consideration of the demurrer the facts alleged in the answer are, of course, admitted. The facts of prime importance are that prior to 1922, the Probate Judges for Spartanburg County, under the fee system, themselves paid whatever expense was necessary for the proper operation of the office; that since 1922, practically all the work of the office has been done by clerks, and the compensation of such clerks has been paid by the county; and that it would have been necessary for the Probate Judge him-

self to have employed help and to have paid for at least some of this expense if the salary Act had not been enacted.

The situation is the same, we think, in so far as it relates to the necessary help, whether the county paid that amount to the Probate Judge and he in turn paid it over to the clerks, or whether the payments were made directly to the clerks. There is no difference in principle between the actual receipt and disbursement of the money by the Probate Judge on the one hand, and the payment on the other by the county to one whom the officer would have been obliged to pay. If the expense was necessary, the Probate Judge received the benefit of the funds so paid.

The compensation of the respondent has been increased to the extent of the amount of clerical and other expenses actually necessary in his office. He will, if his view prevails, receive the fees and costs, and in addition the amount he would necessarily have paid out for clerk hire and expenses.

The invalid salary Act should not result in a loss to an officer; at the same time there is no reason why it should result in an increase of his compensation at the expense of the county.

We think that the county should be allowed to show, if it can, that the clerk hire and expenses, or part of it, were necessary, and that the Probate Judge would have had to pay it; and that the county is entitled to offset, against the claim of the plaintiff, whatever amount of the clerk hire and expenses paid for by the county was necessary for the proper operation of the office and which would have been paid for by the plaintiff if the salary Act had never been passed.

The allegations of fact in the answer, admitted on the demurrer, that it was necessary that such payments be made, and that the plaintiff would have paid for them but for the salary Act, differentiate this case, in our opinion, from other decisions of this Court.

In the *Gamble case,* above, the opinion written by former Chief Justice Stabler held that the county was not entitled

to offset the salary paid to the sheriff of Clarendon County, and, after discussing the matter of salary, said: "What we hold with reference to the payment of salary items, also applies to the items for clerk hire and traveling expenses." (188 S. C., 250, 198 S. E., 866.)

On the question of the offset of salary the majority of the Court did not concur, but in the opinion which on this point became the majority opinion of the Court, the right of the county to offset the salary was upheld. This prevailing opinion did not discuss the question of the clerk hire and expenses, but stated:

"I am unable to concur in the opinion by Chief Justice Stabler in this case insofar as it sustains the demurrer to that portion of the second defense which pleads a credit or offset to respondent's claim to fees and costs to the extent of the salary paid him.

\* \* \* \* \*

"I feel that on the above two grounds, the demurrer to the second defense should be overruled, as far as the salary items therein set forth are attempted to be offset "

It follows that the portion of Chief Justice Stabler's opinion denying the offset of the clerk hire and traveling expense was concurred in by the entire Court. Since the majority of the Court, however, did not adopt the reasoning of Chief Justice Stabler for disallowing the salary offset, it appears that the Court held that, under the facts and circumstances of that case, the offset for clerk hire and expenses should not be allowed.

There is a marked difference in the facts of the instant case. Here the admitted fact is that the clerk hire was necessary, and that Mr. Foster would have had to pay it but for the salary Act. No such allegation appears in the *Gamble case,* and there is no proof whatever on that point.

This same difference in the facts, as presented by the allegation and the proof, exists in the *Ridgill case,* above.

The Circuit Judge in that case, with the acquiescence of counsel, held that only questions of law were involved, and

decided it as a matter of law. The appeal presented a single question: "Where a Clerk of Court entitled to fees and costs is deprived of same by a void statute and salary substituted, should the Court offset against the amount due him not only the salary that he has received but also the amount appropriated for clerical help in his office?"

It was not stated in this question that the amounts appropriated were necessary, and such as the clerk would have had to pay under the fee system. Merely because the county paid for clerical help does not entitle it, as a matter of law, to deduct the amount from the fees legally due the officer. The decisive point involved in the present case, the necessity of the services, was not presented to the Court in any matter in the *Ridgill case,* and so could not have been passed upon.

It is pointed out in that decision that not a cent of the amount paid as clerk hire was received by Mr. Ridgill. It is also stated: "There is not even a suggestion that any part of the salary provided for the help went to him, or that he benefited by it in the least degree." Here, the situation is quite different. It is expressly alleged and admitted as a fact that the plaintiff, Mr. Foster, was benefited by the payment of necessary help in his office; and while it is not alleged and, of course, not even claimed that any part of the clerk hire actually went to him, yet it is alleged that respondent would have had to pay for such necessary services but for the enactment of the salary statute. The result, from a practical standpoint, is the same as if the necessary clerk hire had been received by plaintiff from the county and immediately paid over by him to the clerks.

The latest decision on the subject of offset of clerk hire is that of *Gillespie v. Pickens County,* 197 S. C., 217, 14 S. E. (2d), 900, 906. On the feature of the case relating to an offset for clerical expenses the order of his Honor, Circuit Judge L. D. Lide, was adopted as the opinion of the Court. This action was by the treasurer of Pickens County for the $1.00 execution fees provided by statute. In the course

of the opinion it was said: "There is, however, no evidence that the allowance of clerical assistance by the county during these years had any relationship whatever to the execution fees payable to the treasurer by defaulting taxpayers under the general law of the State." From all that appears in the evidence, the clerk hire may have been for some wholly different work, altogether unrelated to tax executions.

In the present case the Probate Judge of Spartanburg County is suing for his fees generally, under all statutes relating to fees for any and all duties of the office. The answer alleges, not only that the clerical services which were paid for by the county were necessary, and would in fact have been paid for by the plaintiff, but that "practically all the matters handled through the office of the plaintiff and embraced within the action were functioned by subordinate clerks in the office of the plaintiff, whose salaries were paid by Spartanburg County." The clerk hire bears a direct and definite relationship to the fees which the plaintiff claims.

So then, in none of these cases was a situation presented where it was alleged, or proved, or where as in the present action the admitted facts showed, not simply that the county had paid for clerks, but in addition that such clerical assistance was necessary and would have been paid for by the officer but for the passage of the salary Act.

The county also claims that it is entitled to offset the entire $12,879.96, whether the clerk hire was necessary or not, for the reason that the salary Act provided , in lieu of fees, a substituted compensation of salary and clerical help, and that respondent must account not only for the salary, but for the clerical help paid under the same Act.

This contention, we think, has been settled against the views of the county by the *Gamble* and *Ridgill cases*. Clearly, there should not be an offset against plaintiff's claim to his fees for a needless expenditure for clerk hire under the annual supply bills. The problem goes back to the essential element which we have been discussing, the necessity for

the clerk hire. The tenth, eleventh, and twelfth exceptions, which raise this point, are overruled.

As to the necessary expenses, we think that the learned Circuit Judge was in error in sustaining the demurrer to the second defense.

The result of the overruling of the demurrer will be that the respondent will have full opportunity to show that the expense was not necessary. The county must, in the first instance, offer evidence that he could not operate the office without expense, to what extent the expense was necessary, and to what extent the respondent has received the benefit from the county's payments to others. If the county does offer such testimony, the respondent may offer evidence in rebuttal. If the county has employed too many clerks, or if it has paid too much for their services, and more than the respondent could have secured the services for, that may be shown. Respondent has the right to show that he could have used the help of members of his family, or that he could have operated the office by himself, without any expense.

While ordinarily the word "offset" carries with it the idea of a mutuality of demands, yet just as salary paid to the plaintiff may be regarded as a payment on account of the debt due him for his fees and costs, so the clerk hire, to the extent that it may be found to be necessary, should be so regarded.

As was said in the *Gamble cases* "Aside from the technical doctrine of estoppel, it is sound to treat the salary payments from the angle of payments on account of the legal compensation to which the sheriff is entitled by way of fees."

And in the case of Gillespie, above, it was declared: "This claim is set up in the answer as a defense and also as a counterclaim, and it appears that no reply was filed to the counterclaim. However, the claim is not properly a counterclaim but really is a plea of partial payment."

We turn, now to a consideration of the sixth defense, which involves a construction of Section 6231, and related sections of the Code.

This defense alleges that Section 6231, in providing the sum of $10.00 for each commitment, intended to and did provide a fund to defray the costs of medical examination of insane persons, and added a proviso that the county board was authorized to fix the compensation and expense, and to audit and pay all claims thereunder; and that the County Board of Spartanburg County has duly audited and paid all claims for a period embraced within the cause of action, and has accordingly discharged all claims, which were intended not by way of compensation to plaintiff, but as a means of paying various charges and expenses in connection with the examination of insane persons.

To this defense, also, the plaintiff interposed a demurrer, on the ground that the defense contained no allegations of fact which constitute an answer to the complaint, but on the other hand contained statements of conclusions of law, and did not state a valid defense.

The demurrer was sustained by the Circuit Judge.

Section 6231 reads, in part, as follows: "For the duties required under the provisions of this chapter of the judge of probate, he shall be allowed the sum of ten ($10.00) dollars for each commitment, to be paid out of the county treasury on proper warrant: Provided, That the county board of commissioners, or other proper authority for the several counties in this State are hereby authorized and empowered to fix the compensation, charges and expenses to be paid and incurred in the examination of insane persons, and to audit and pay claims therefor: Provided, That the same shall not be greater than now allowed by law."

We do not think that it is the intention of this section that the $10.00 was to provide a fund to defray the costs of medical examination. It is clearly stated that for the duties required by Chapter 132 of the Code to be performed by the Probate Judge, he shall be allowed a fee

of $10.00 for each commitment. Whatever sums the county has paid to physicians were in discharge of obligations due by it, and did not amount to payments to the respondent. As said by the Circuit Judge, the duties of the Probate Judge, under Chapter 132, are many and varied. Among other duties, the Probate Judge is required to investigate each case; to summon two physicians to examine the person; to cite the person and his guardian or relative, and to pass upon his sanity or insanity; to complete in duplicate the paper required by the State Hospital and to forward both copies to the superintendent; if requested by the superintendent, to deputize a suitable person to conduct the insane person to the hospital; and to see that a certified copy of the commitment accompanies the person, and to file the original in his office. Duties are placed upon him in connection with insane persons who are citizens or residents of other states. He is authorized, after investigation, to appoint a committee for any person of unsound mind and to make orders in reference to the custody and control of his estate.

No doubt the first proviso of the statute would cover sums due to physicians for medical examinations, but the opening sentence of the Act clearly refers to the Probate Judge.

The appellants also contend that in no event is the respondent entitled to collect more than $3.00 for any lunacy proceeding had by physician's certificate only, under Section 4942 of the Code. This is the section providing for the fees and costs of the Probate Judges generally, and reads, in part, as follows: "For proceedings in lunacy, ten dollars: Provided, Where proceedings in lunacy are only had by certificate of physicians, three dollars."

We think that no such issue is made by the sixth defense. It relates to a wholly different matter. In it the defendants claimed that the section was intended to provide for the payment of medical examinations and that the county, having audited and paid claims for medical examinations, had discharged its obligations in the premises.

It expressly refers to Section 6231 of the Code, and to no other section. There is no allegation in the defense that any of the lunacy proceedings were on physician's certificate alone. The present contention being without the scope of the issue raised by the defense it cannot be said that the Circuit Judge was in error in not adopting it.

All that we hold on this point is that the contention as to the three dollar fees is not now properly before the Court, under the sixth defense and the demurrer to it.

We think that Judge Sease was correct in sustaining the demurrer to the sixth defense.

The appellants have abandoned their exceptions relating to the sustaining of the demurrer to the third, fourth, and fifth defenses.

So much of the order of the Court of Common Pleas as sustains the demurrer to the second defense is reversed, and in all other respects the order is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.