15940

FOSTER v. TAYLOR *ET AL.*

(42 S. E. (2d) 531)

*Messrs. H. K. Osborne* and *Thos. B. Butler,* of Spartan-
burg, for Appellants, cite:

*Messrs. Odom & Bostick* and *Johnson, Johnson & Foster,* all of Spartanburg, for Respondent, cite:

April 21, 1947.

STUKES, AJ.: Respondent is a former Probate Judge of Spartanburg County whose compensation the legislature undertook to change from fees to salary. He sued the county upon the ground of the unconstitutionality of the legislative act thereabout and recovered judgment on May 24, 1945, in the sum of $4,707.16 with interest from May 1 preceding, and costs. See *Foster v. Mallory et al.,* 199 S. C. 144, 18 S. E. (2d) 740.

Upon the failure and refusal of the county governing Board to pay the judgment respondent filed his petition for mandamus. It was resisted principally upon the grounds which will be reflected in the statement of the allegedly applicable statutes, which are as follows:

Sections 4755 *et seq.* of the Civil Code of 1942 (Chapter 116, Article 44) relate to the government of Spartanburg County. Section 4767 thereof provides that any surplus ex-

isting in the county general funds, otherwise unappropriated and unpledged, is thereby appropriated for the purpose of paying outstanding county bonds and interest which may be due at the time of the accrual of such surplus or thereafter, whereupon the tax levy for that year shall be proportionately reduced. Section 4755 provides that the county Board shall pay out funds only for salaries fixed by law and items incurred by the Board or its duly authorized purchasing agent. And section 4758 requires that the county's financial affairs shall be budgeted by the Board, and there shall be expended no amount in excess of the amounts appropriated for the various departments of the county government.

Defendants (the county and its Board members) also set up the provisions of the annual county Supply Acts which from 1938 (40 Stat. 2761) through the Act of 1946 (44 Stat. 2430) contain the following quoted portion of section 1 of each of said Acts:

"Provided, that any surplus funds on hand at the close of any fiscal year or period shall be applied to the payment of the principal and/or interest on bonds, thereby reducing the levy proportionately. However, the County Board of Spartanburg County may make use such surplus funds to meet payment of items appropriated for until taxes are available for payment of such items and the replacing of surplus funds allocated for the payment of bonds and interest."

Beginning with the county Supply Act in 1942 (42 Stat. 2491) and through that for the current year, there appears in the Acts the following:

"Authorization is hereby made for the expenditure of any surplus funds or funds on hand not allocated to specific items at the end of the fiscal year in excess of the items herein appropriated for. Said funds may be applied to any existing agreements or contracts entered into. The provision for the application of surplus funds as set forth in Item 1, shall not affect the expenditure of funds as authorized in this Section. Such disbursements shall be made upon ap-

proval of a majority of the Legislative Delegation including the Senator."

It is seen from the foregoing that there is conflict between the terms of Section 4767 of the Code and the annual Supply Act provision last quoted, but the latter requires that the expenditures of surplus funds (other than for bonded debt) shall be upon the approval of a majority of the legislative delegation. Further conflict may be found by reference to Section 2880 of the Civil Code of 1942 which also refers to Spartanburg County and includes a sub-section designated as 2880-5 (Vol. 2 of the Code, page 604) as follows: "Disposition of unapportioned funds in the treasurer's office.—All unapportioned funds now in the county treasurer's office, or such as may accumulate hereafter without being designated for some definite purpose; be credited to the ordinary county accounts: provided, that any future claimant who may establish a just claim to any part of said funds be paid by the treasurer under an order by the circuit court from the fund or funds which have received credit for such amount." It will not be necessary to resolve these various apparent conflicts in the statutes for our solution of the problem presented by the appeal rests upon a broader ground.

The trial Judge held that respondent's judgment against the county was obtained under such circumstances that it was really a consent judgment which constituted a contract between the parties and came within the disposition of the surplus funds in the subsequent Supply Act whereby it was provided that they "may be applied to any existing agreements or contracts", and that was an express exception to the prior appropriation of the surplus to the payment of the bonded debt of the county. It was further held that the subjoined provision of the Supply Act requiring that disbursement of surplus for the payment of existing agreements and contracts be made upon the approval of a majority of the legislative delegation was an invalid impairment of the obligation of the contract, in contravention of the State Con-

stitution, Art. 8, Section 1, and of the Constitution of the United States, Art. 1, Section 10.

It is unnecessary for us to approve the stated ground ██ in order to affirm the judgment. No principle in the disposition of appeals is more firmly established than that a right decision upon a wrong ground will be affirmed. It is equally well settled that determination of unconstitutionality of a legislative act will be avoided when possible. Proper application of these rules enables us to decide the case without examination of the soundness of the judgment of the Circuit Court. We need concern ourselves only with the propriety of the result of it.

Concisely stated, the basis of the appeal is that the county cannot be required by the Court to pay respondent's judgment even from surplus funds for there has been no legislative appropriation for the purpose, but on the contrary the surplus funds, however, much and unneeded, have been expressly appropriated to the payment of county bond debt and interest. Section 9 of Art. 10 of the State Constitution is relied upon, as follows: "Money shall be drawn from the Treasury only in pursuance of appropriations made by law."

Reference has been made to the surplus funds of the county. They amounted on June 30, 1946, to the sum of $417,000.00. On that date the outstanding bonds of the county classified as "Ordinary" were $1,804,354.99, and Road Improvement Bonds $519,445.94, the two series thus aggregating $2,323,800.93. The complete table of maturities in the record indicates that these amounts include interest to maturity of all the bonds and also bank commissions for the payment of maturities. The aggregate of the principal is $2,030,500.00. Principal, interest and bank commission maturities for the fiscal year ending June 30, 1947, aggregate $384,968.44. It is seen that the surplus at the beginning of the current fiscal year was substantially more than the bonded debt maturities for the year. Incidentally, the present Supply Act, already hereinabove cited (44 Stat. 2430), appropriated for the maturities, principal, interest

and bank commissions, of the "Ordinary" county bonds, but apparently not for the Road Improvement Bonds, so the surplus funds on hand at the beginning of the current fiscal year over bonded debt Supply Act appropriations was more by $84,968.44 than the foregoing figures indicate. The amount of respondent's judgment (involved in this action) is quite insignificant in comparison with the present real surplus of the county. It appears that the county authorities would "rob Peter (the judgment creditor) to pay Paul (the bond holders)" despite already more than ample provision for Paul's current needs.

The generally accepted authority of Freeman on Judgments, 5th ed., contains in Vol. 2, page 2227, Section 1069, the following:

"The object of a judgment against a county is to obtain an audited demand which shall no longer be open to contest * * *. On being allowed (if required to be by a board, pursuant to a statute-interpolated), it will stand in the same position and be subject to payment in the same manner as other audited demands. No action can be sustained on such judgment; but if the board of supervisors refuse to allow the judgment when properly presented to them, they may be compelled to do so by writ of mandate * * *".

The writ of mandate will not issue if the county be without funds except in those States where the defendant county Board or other local authority is empowered to levy taxes for the purpose of paying a judgment against the county. *Emeric v. Gilman,* 10 Cal. 404, 70 Am. Dec. 742, note. Illustration of enforcement against a municipal corporation without surplus funds but whose governing Board is empowered to levy taxes or assessments is found in *State ex rel. Ascension Red Cypress Co. v. New River Drainage District,* 148 La. 603, 87 So. 310.

The fallacy of appellants' position lies, we think, in their misconception of the meaning of the word "surplus" with respect to the finances of a public corpora-

tion, here Spartanburg County. They depend for their refusal to pay the judgment upon the repeated and continuous appropriations by the legislature of the surplus of the county to payment of the bonded debt of the county, both current and future maturities; but the "surplus" which was thereby appropriated did not, and does not, properly, and therefore legally, include the sums of money which should rightfully have long since been paid to respondent. His services, for which he has not been legally paid, contributed in the aggregate to the so-called surplus in the amount of his judgment against the county. The county does not own the funds to this extent in its supposed surplus; in that measure it is respondent's money, not that of the county. So when the legislature undertook to appropriate the surplus of the county it did not appropriate it in so far as it was comprised of funds which rightfully belonged, and belong, to respondent.

This concept is not new in this Court. It is found in *Scott v. Anderson County et al.*, 195 S. C. 92, 10 S. E. (2d) 359. There it was a former county treasurer whose fees for issuance of tax executions were wrongfully withheld from him when collected and included in a large sum of money in the hands of the county, unappropriated. It was said in the opinion: "This Court held in *Smith v. Ashmore*, 184 S. C. 316, 192 S. E. 565, that *mandamus* is the proper remedy to compel the issuance of a salary warrant, or to compel the payment thereof when the salary is fixed by law * * *. Therefore the question before the Court is whether *mandamus* will also lie to compel the payment of fees * * *. We are unable to differentiate between 'fixed salary' and 'fixed fees' * * * when the fees were never the property of the defendant county * * *." The principle is none the less applicable because some of the fees which the present respondent earned, and recovered judgment for, were of the kind which the county ought to have paid him and did not, such as for lunacy commitments. They increased the present county "surplus" just as effectively as fees collected from the public and turned into the treasury

in cash. The latter were likened to a trust fund in *Scott v. Anderson County, supra.* This is the key to the answer to appellants' strong contention with respect to Sec. 9 of Art. X of the constitution that funds shall be drawn from the treasury only pursuant to appropriation. See *State ex rel. Marshall v. Starling,* 13 S. C. 262, particularly the quotations therein from Moses on Mandamus and High on Extraordinary Remedies.

The word "surplus" has been helpfully defined in decisions of other courts which we cite from Vol. 40, page 859 *et seq.,* of the Permanent Edition of Words and Phrases, where their holdings, in line with this, are digested: *McConnell v. Allen,* 105 N. Y. S. 16, 120 App. Div. 548; *Lawrence v. American Surety Co.,* 263 Mich. 586, 249 N. W. 3, 88 A. L. R. 535; *State ex rel. Cowles v. Butts,* 125 Fla. 584, 170 So. 714; and *In re Monsell,* 142 Okla. 130, 285 P. 836.

The surplus then which the legislature appropriated to future (beyond the current fiscal year) maturities of county bond principal and interest did not include that which did not rightfully belong to the county although it had possession of it. Such funds, of which the county is not the real or equitable owner, are not subject to the ban of Art. X, Sec. 9, of the constitution against disbursement without legislative appropriation. It applies to funds of the public, not another's and not trust funds. *Button v. Anderson, Auditor,* (Vt. 1942) 28 A. (2d), 404, 143 A. L. R. 195. See also the cases cited in the footnotes at page 746 of 42 Am. Jur., Public Funds, sec. 42.

Thirty-three exceptions were taken by the appellants to the judgment of the lower court which they reduced in argument to six stated issues. All of them have been expressly or impliedly disposed of adversely to appellants' contentions by what has been said except the third which is, in effect, that the enforcement of the judgment would constitute judicial usurpation of a legislative function and violate Art. 1, Sec. 14, of the State Constitution

which enjoins separation of the three principal departments of government and forbids the exercise by any one of such departments of any of the functions of the others. This important principle is a foundation stone of our Federal government and is common to the fundamental law of apparently all of the American states. However, enforcement of the judgment of the court by means of *mandamus,* here resulting in payment from unappropriated surplus funds which were provided *pro tanto* by the services of respondent as a county officer, is not the usurpation of a legislative right by the court but is the exercise of its own function. On the contrary, if under the circumstances of this case the legislature should prevent the enforcement of the judgment by its action or non-action, it would be assuming the court's prerogative, or rather setting at naught the judgment and process of the court. Each branch of the government is and ought to be independent of the others. 11 Am. Jur. 884 *et seq.,* Constitutional Law. A leading case on the general subject is *Thomas v. Owens,* (1853) 4 Md. 189, commented upon and quoted from at length in 88 A. L. R. 1054, 1055. The court will, of course, not attempt to compel the legislature by mandamus to perform a legislative duty or function. 34 Am. Jur. 910, notes in 136 A. L. R. 677 and 153 A. L. R. 522. There is a reciprocal duty upon the legislature to respect the judgments of the court.

Granting that the courts of the United States are not subject to the inhibition common to the state constitutions that money shall be drawn from the treasury only in pursuance of appropriations made by law (Art. 10, Sec. 9, of ours), their procedure for the collection of their money judgments against counties and other public corporations provide an interesting analogy. It is by means of *mandamus.* There is an annotation upon the subject in 19 Law. ed. 704, and pertinent discussions occur in the opinions in *U. S. ex rel. Morton v. King, County Treas.,* (C. C., E. D. Mo. 1896) 74 F. 493; *City of Harper, Kan., v. Daniels* (8th C. C. A. 1914) 211 F. 57; and *County of Greene v. Daniel,* 102 U. S.

187, .... S. Ct. ...., 26 Law. ed. 99. There is a rather extensive review of other similar Federal authorities in the order denying petition for rehearing of *Green v. West, County Treasurer,* 161 S. C. 161, 159 S. E. 23; for others see *State ex rel. Peoples Bank v. Goodwin, County Supervisor,* 81 S. C. 419, 62 S. E. 1100.

Striking similarity to this case is found in *Hampton, County Treasurer, v. Hamilton Const. Co.* (Okla. 1935) 48 P. (2d) 273) where it was held, true by the aid of statutory provisions, that a judgment against the county was payable from its sinking fund when it would not be thereby decreased to a cash sum less than sufficient to pay interest coupons on bonds due, and bonds maturing, within the fiscal year for which the sinking fund is liable. *Mandamus* was granted against the county treasurer. In *Duvall's Adm'x v. Elliott County,* 275 Ky. 85, 120 S. W. (2d) 782, the widow of a county jailer was suing for unpaid compensation earned by her husband in his lifetime. The court said: "The validity of plaintiff's claim is not denied * * * The county owes it to the creditor to adopt some legal means to pay the indebtedness." *Mandamus* was issued to budget the debt. The Kentucky court also succinctly said in *Citizens' Bank v. Pulaski County,* 216 Ky. 332, 287 S. W. 892: "Ordinarily a county cannot be coerced. An execution cannot be issued against a county, but it does not follow, because an execution cannot be issued upon a judgment against a county, that a claimant whose claim the county refused to pay is not entitled to have that claim reduced to judgment. And after it is reduced to judgment, if the county then refused to pay, *mandamus* will be the only remedy." In *Anniston v. Hurt,* 140 Ala. 394, 37 So. 220, 103 A. S. R. 45, there was a judgment for damages in tort against a city and *mandamus* sought for collection. Council had appropriated all revenue, including an item for "Interest on Bonds and Accounts, $7,600.00." The latter was held to be an inferior obligation to a judgment, only current expenses coming ahead, and the Writ was issued.

It was said in the opinion of this Court in *Brooks v. One Motor Bus, etc.,* 190 S. C. 379, 3 S. E. (2d) 42, possibly dictum there but we think nevertheless sound, as follows: "When a judgment is rendered against a county, it is the duty of the board of supervisors to apply funds in the treasury, not otherwise appropriated, to its payment * * *". That is this case in a nutshell.

The following decisions have been cited and relied upon by appellants: *State ex rel. Peoples Bank of Greenville v. Goodwin, County Supervisor, supra,* 81 S. C. 419, 62 S. E. 1100; *Green v. West, County Treasurer et al., supra,* 161 S. C. 161, 159 S. E. 23, *Clary, County Supervisor, et al., v. Harvey, County Auditor,* 176 S. C. 512, 180 S. E. 673; and *Brown et al. v. Town of Patrick,* 202 S. C. 236, 24 S. E. (2d) 365. Careful reference to them discloses that none involved facts similar to those of the case in hand. The authority of them is unaffected by this decision. It would incur needless prolongation of the opinion to point out the important differences of fact which are ascertainable upon even casual examination of the cases. They have defined and settled the principle (and some of them use substantially these words) that a court cannot levy taxes or direct otherwise unauthorized officers or boards to do so without unwarrantedly usurping a legislative function; but that principle is not applicable to the facts now before us, and we do not impinge upon it.

All of the people of Spartanburg County, which embraces the taxpayers, are bound by the judgment sought to be enforced in this proceeding and this, of course, includes the personal appellants in their individual as well as their official capacities. *Sauls v. Freeman,* 24 Fla. 209, 4 So. 525, 12 A. S. R. 190; *Bear v. Brunswick County,* 122 N. C. 434, 29 S. E. 719, 65 A. S. R. 711; *Clark v. Wolf,* 29 Iowa, 197; *Terry v. Town of Waterbury,* 35 Conn. 526. Note, 105 A. S. R. 209. Thus the taxpayers have had their day in court; and considering the nature of the action and comparing the sum sued for (see *Foster v. Mallory et*

*al., supra,* 199 S. C. 144, 18 S. E. (2d) 740) with the amount of the final judgment, it appears that they have been well represented.

We conclude that payment of respondent's judgment necessitates the performance by the appellant county officers of plain, ministerial duties and that, therefore, the remedy of *mandamus* is available to him.

Judgment affirmed.

BAKER, CJ., FISHBURNE and OXNER, JJ., concur.. TAYLOR, J., disqualified.