17224

NED GREGORY *et al.*, Petitioners-Respondents, v. WALTER W. ROLLINS, Chairman, Board of Directors of Lancaster County, *et al.*, Respondents-Appellants.

(95 S. E. (2d) 487)

270

*Messrs. Williams & Parler,* of Lancaster, *for Respondents-Appellants,*

*Messrs. Gregory & Gregory,* of Lancaster, *for Petitioners-Respondents,*

November 27, 1956.

LEGGE, Justice.

On April 2, 1955, the resident judge of the Sixth Judicial Circuit ordered that a writ of mandamus issue requiring appellants (the Board of Directors, the County Treasurer and the Legislative Delegation of Lancaster County) to issue and pay warrants in satisfaction of a claim of respondents Peat, Marwick, Mitchell & Co., in the amount of $3,570.00 for services as accountants in making an audit of the fiscal affairs of that county for the year ended June 30, 1954, and in satisfaction of a claim of respondent Ned Gregory in the amount of $500.00 for services as attorney in matters relating to such audit. Appellants charge error in the issuance of that order, in that:

(a) At the time of its issuance no funds of the county were available for such payments;

(b) Its effect would be to appropriate county funds for purposes not contemplated or authorized by the current county supply act; and

(c) It contravenes Article I, Section 14 of the Constitution of South Carolina.

On August 14, 1954, Harold Rowell and others presented to the resident judge of the Sixth Judicial Circuit their petition reading as follows:

"1. That they are a committee of the Lancaster County Grand Jury, authorized by unanimous vote of the said jury to file this petition and proceed to such extent as may be necessary to obtain an audit of the office, books, papers, vouchers and accounts of Lancaster County, pursuant to 38-409 of the 1952 Code.

"2. That it is the desire of the Lancaster County Grand Jury that the office of the County of Lancaster and the affairs transacted therein be investigated and a complete audit of the books and records be made by a certified public accountant for a period of one (1) year, from June 30, 1953, to June 30, 1954.

"3. That the said Grand Jury is without means of defraying the expense of such an investigation and audit, and the Senator for Lancaster County refuses to authorize such expenditures, as required by the County Appropriation Act, although the House Members have signed such an authorization.

"4. That no audit has been made over this period of time, and only a cursory annual routine audit has been made since 1936 by the same auditor.

"5. That petitioners believe that it would be for the best interest of the County that a different auditor be employed for this audit rather than the one who has previously done this work.

"6. That the said Grand Jury is informed and believes that large sums of money have been unlawfully spent, and that appropriate records of expenditures for bridges, chain-gang operations and numerous other items have not been kept.

"7. That bids have been received by at least three (3) certified public accountants, and the sum of four thousand ($4,000.00) dollars must be approved by this court before an accountant can be employed to make this audit.

"8. That it has become necessary for petitioners to employ attorneys, and that a reasonable sum should be allowed their said attorneys.

"Wherefore, your petitioners pray:

"1. That this honorable Court approve the amount of $4,000.00 to pay the fee of Peat, Marwick, Mitchell and Company, or such other certified public accountants as they may employ, and a reasonable sum for attorneys' fees.

"2. For such other and further relief as to the court may seem just and proper."

Upon this *ex parte* petition the circuit judge issued on the same day an order "approving" an expenditure of $4,000.00 to pay for such audit.

On November 5, 1954, the resident circuit judge issued another order, also *ex parte,* reciting that the accountants employed pursuant to the order of August 14, 1954, had completed their services and had filed with the aforementioned petitioners their bill for such services, in the amount of $3,570,00, and that $500.00 appeared to be a reasonable fee for petitioners' attorneys for their services in the premises, and accordingly ordering "that the Directors of Lancaster County issue to Messrs. Peat, Marwick, Mitchell and Company warrant in the amount of three thousand five hundred seventy ($3,570.00) dollars, and to Messrs. Gregory & Gregory, Attorneys, warrant in the amount of five hundred ($500.00) dollars, in payment of aforementioned claims approved by this court".

Copies of the order of November 5, 1954, were thereafter delivered to the Board of Directors of Lancaster County, and verified claims were presented to the Board by the claimants for payment.

On January 8, 1955, the Board of Directors petitioned the resident circuit judge to vacate his order of November 5, 1954, "on several grounds" not specified in the record before us. This petition was orally denied.

Thereafter the claimants, who are respondents here, filed their petition, reciting the proceedings before mentioned and praying the issuance of a writ of mandamus requiring appellants "to issue such warrants as may be necessary and pay the same in satisfaction of the claims of petitioners". To this petition and the rule to show cause issued thereon appellants made answer and return, alleging in substance:

1. That the fiscal affairs of the county for the current year (July 1, 1954—June 30, 1955) were controlled by the county supply act for that year (Act No. 878 of the 1954 Session of the General Assembly, 48 St. at Large, p. 2313); that all of the money appropriated by that act had been allocated and the expenditures thereof specifically provided for in said acts; and that no funds were available for payment of said claims; and

2. That the order of November 5, 1954, is void and without authority of law, because:

(a) It attempts to appropriate funds of the county for purposes not contemplated or authorized by the county supply act, and

(b) It attempts to appropriate funds of the county, in violation of Article I, Section 14 of the State Constitution.

The matter was heard by the resident circuit judge on February 19, 1955, and on April 2, 1955, he ordered that the writ issue as prayed. Appeal is from that order.

We are unable to agree with the suggestion that appellants are precluded from raising the questions here presented because the Board of Directors did not appeal from the order denying their petition to vacate the order of November 5, 1954. Such contention was not made by the pleading in the instant case. Additionally, we note: (1) that neither the respondents here nor the appellants, the county treasurer and the legislative delegation, were parties to the former proceeding by Rowell and others in which the order of November 5, 1954, was issued, or to the petition by the Board of Directors to vacate that order; and (2) that no action or inaction by the Board of Directors in that proceeding could estop the legislative branch of government from asserting its constitutional immunity from judicial control.

Section 38-409 of the 1952 Code reads as follows:

"Grand juries may, whenever in their judgment it becomes necessary, employ one or more expert accountants to aid them to examine and investigate the offices, books, papers, vouchers and accounts of any pnblic officer of their respective counties and to fix the amount of compensation or per diem to be paid therefor, upon the approval of the presiding or circuit judge given before any expert is employed."

It is fundamental that the appropriation of public funds is a legislative function, Const. 1895, Art. X, § 9, and therefore beyond the power of the Grand

Jury, as the committee of that body recognized in Paragraph 3 of their petition of August 14, 1954, before quoted. It is beyond the power of a County Board of Commissioners or, in Lancaster County, its Board of Directors. Cf. Code 1942, § 3864; Code 1952, §§ 14-15 and 14-2563; *Beacham v. Greenville County,* 218 S. C. 181, 62 S. E. (2d) 92. It is likewise beyond the province of the judiciary, perforce Article I, § 14 of the Constitution. Foster v. Taylor, 210 S. C. 324, 42 S. E. (2d) 531. The courts may, by mandamus, require the proper officials of a county such as its Board of Commissioners or, in the case of Lancaster County, its Board of Directors, to include a proper claim against the county in their next budget for county expenses, to be submitted to the General Assembly. *Green v. West,* 161 S. C. 161, 159 S. E. 23. And they may also, by mandamus, require the Board of Commissioners and the County Treasurer to pay a claim out of funds in the hands of the County Treasurer belonging, as a matter of law, to the claimant and not to the county. *Scott v. Anderson County,* 195 S. C. 92, 10 S. E. (2d) 359; *Foster v. Taylor, supra.* But they may not, by mandamus or otherwise, direct the appropriation of public funds, for to do so would be to trespass upon the legislative domain.

Respondents suggest that mandamus will lie to compel payment of a judgment against the county out of its surplus funds; and in support of that contention they point to the following from *Brooks v. One Motor Bus,* 190 S. C. 379, 3 S. E. (2d) 42, which was quoted with approval in *Foster v. Taylor, supra* [210 N. C. 324, 42 S. E. (2d) 536]:

"When a judgment is rendered against a county, it is the duty of the board of supervisors to apply funds in the treasury of the county, not otherwise appropriated, to its payment * * *."

Apart from the fact that the statement just quoted was dictum in both cases, recognition of its soundness is far from saying that upon failure of the county officials to act

the court may compel them to apply such funds to the payment of the judgment. Mandamus in such circumstances would, in effect, amount to· appropriation in the legislative sense of that word. Cf. 42 Am. Jur., Public. Funds, Section 43, p. 747; Vol. 3A, Words and Phrases, Appropriation, pp. 467-468. But the question is not a live one here, because the evidence does not indicate that there were any unallocated or surplus funds in the county treasury at the time of the hearing or at the time of the issuance of the circuit decree. On the contrary the testimony of the county treasurer was to the effect that there were no unallocated funds, and that a deficiency appropriation would be required to meet the anticipated expenses of the county for the remainder of the fiscal year. The circuit decree is based not upon a finding. that there were in the county treasury unallocated funds, but rather upon the assumption of anticipated revenue and continued deficit financing.

The Lancaster County Supply Act for the fiscal year July 1, 1954—June 30, 1955, Act No. 878 of the 1954 Acts of the General Assembly, contains the following provisions:

"Section 11. The board of county directors is hereby empowered and directed, upon the written authority of the Senator and at least one member of the House of Representatives from Lancaster County, to have an audit made of each county office from the time of the previous audit to July 1, 1954. An amount sufficient to defray the cost of such audit is hereby appropriated out of the general funds of Lancaster County. All such audits are to be made by a Certified Public Accountant. In addition to the audit above provided, any superintendent or principal or any other school employee of Lancaster County who handles any school funds shall maintain a complete record of all receipts and disbursements, and on or before August first of 1954, and each year thereafter, their books shall be audited by an accountant and a certified copy of same shall be filed with the county board of directors. The expenses incurred in the audit shall be paid by the county board of

directors upon the approval of a majority of the Lancaster County Delegation, including the Senator.

\* \* \* \* \*

"Section 14. If circumstances arise, which, in the judgment of the Lancaster County Legislative Delegation or a majority thereof, including the Senator, require the expenditure of a greater amount than hereinabove provided for any purposes, or should, in the judgment of said delegation or a majority thereof, including the Senator, the interest of Lancaster County require the expenditure of funds for purposes not mentioned in this act and above enumerated, the said delegation, or a majority thereof, shall have, and are hereby given the right by resolution to increase the amount appropriated for any item, and may also appropriate funds for purposes not mentioned or referred to in this act, which resolution, or resolutions, shall be filed with the board of county directors for Lancaster County as their authority for expending the funds thus appropriated, and the board of directors may borrow, if necessary, such amounts as may be required to meet such increases or additional appropriations, and may pledge the full faith and credit of Lancaster County for the payment of the amounts so borrowed.

"Section 15. The county board of directors of Lancaster County is hereby authorized, empowered and directed, with the approval of the Senator and at least one member of the House of Representatives from Lancaster County, to borrow money for such public purposes as may be necessary, and to irrevocably pledge the levies and the faith, credit and taxing power of Lancaster County for the payment of all moneys which may be borrowed hereunder".

Insofar as they concern the auditing of the books of the officers of Lancaster County for the fiscal year July 1, 1953-June 30, 1954, Section 38-409 of the 1952 Code and Act No. 878 of the 1954 Acts of the General Assembly, being *in pari materia,* must be construed together in order to ascertain the intention of the legislature. *Tallevast*

*v. Kaminski,* 146 S. C. 225, 143 S. E. 796; *Fishburne v. Fishburne,* 171 S. C. 408, 172 S. E. 426; *Edwards v. State Educational Finance Commission,* 222 S. C. 433, 73 S. E. (2d) 456. Also, since Section 38-409 is a general law and the 1954 Act a special one, the latter must prevail where the two are in conflict. *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority,* 215 S. C. 193, 54 S. E. (2d) 777.

Nothing in the record before us suggests an intention on the part of the legislature that there should be more than one audit of the financial affairs of Lancaster County for the fiscal year in question. On the contrary, it seems obvious that the supply act contemplated but one audit, and that to be made upon the written authority of the Senator and at least one member of the House delegation and paid for by the County Board of Directors upon the approval of a majority of the legislative delegation, including the Senator.

It will be noted, moreover, that Section 38-409 does not purport to give the Grand Jury any power with regard to the cost of the audit then authorized, other than to fix the amount of the accountant's compensation "upon the approval of the presiding or circuit judge". Appropriation of public funds to meet such payment is, as we have said, a legislative matter. It cannot be compelled by mandamus.

Reversed.

STUKES, C. J., TAYLOR and OXNER, JJ., and JAMES B. PRUITT, A. A. J., concur.

Moss, J., disqualified.