## HANKINSON v. HANKINSON.

1. AGRICULTURAL LIEN—ADVANCES—ISSUES—MULE.—Circuit Judge here should have passed on issue raised by defendant, that claim of plaintiff had been paid, and should have held that a mule sold to a tenant to make a crop with was not "advances" for that purpose under the lien law, and that only amount due by tenant secured by lien on crop was rent, and of that all was paid except $30.

2. IBID.—IBID.—ESTOPPEL—LIENOR AND LIENEE.—If a senior lienee by parol agreement permit a third person to take and apply to the payment of an unsecured debt enough of the crops covered by his and junior lien to pay his own debt without notice to junior lienee, he cannot afterwards maintain an action against junior lienee for the crops seized by him under his lien and applied to his lien debt. *Moore* v. *Bynum,* 10 S. C., 460, and *Frost & Co.* v. *Weathersbee,* 23 S. C., 368, *distinguished from this.*

Before GARY, J., Aiken, July, 1900. Reversed.

Action for damages by Frank H. Hankinson against

13—61

Luther H. Hankinson.    The following is the Circuit decree:

"The amended complaint upon which this case was heard by me was omitted from the record furnished me by the attorneys in the cause; as a consequence I have some difficulty in stating the issues made by the pleadings.

"The action is for damages, alleged to have been sustained by the plaintiff, under the following circumstances: On the 10th day of February, 1897, Preston Tutson rented a certain farm from the plaintiff, Frank H. Hankinson, for which he agreed to pay as rent, $100.    At this time, it appears that Tutson was indebted to the plaintiff in the sum of $166.06, purchase money of a mule sold by plaintiff to Tutson, and also for supplies advanced.    As evidence of the debt, Tutson executed his note to Hankinson for the amount of $266.06, bearing date 10th of February, 1897, and to secure the payment of said note, Tutson at the same time executed a mortgage to Hankinson of two mules, and his crop of every kind grown during the year 1897, on the tract of land rented from plaintiff.    This mortgage was recorded on the 18th day of February, 1897.    It appears that in November of that year, Tutson had harvested said cotton, amounting to three bales, and stored it in a barn on said premises, separate and apart to itself, and delivered it to the plaintiff, Hankinson, as part payment for the rent and mortgage debt due him.    Shortly thereafter, and before Hankinson had removed said cotton, the defendant, Luther H. Hankinson, had the same seized under a warrant, foreclosing a lien which Tutson had given him, of date 12th March, 1897, and recorded 8th of April, 1897, for the sum of $40.    While the cotton was still in the possession of the plaintiff, in said barn, the defendant, Luther Hankinson, sent his wagon, with his agent or servant, and had the barn broken open, the cotton carried away, and ginned and marketed, in Augusta, Ga., and with the proceeds he paid the amount of his said lien and the costs.    The overplus he turned over to Tutson, the tenant of plaintiff.    At the same time the cotton was levied

upon and seized, the constable making the levy, under the same process, levied upon the cotton, corn, potatoes and cane remaining in the field, and forbade Tutson from gathering the same. No effort was made on the part of the defendant, nor of the constable who levied upon the same, to gather said crop or any part thereof, and the same was destroyed in the field as a result.

"The defendant, while practically conceding these facts, insists that he is not liable, for the reason that the plaintiff has estopped himself by conduct from asserting his alleged claim of damages, under the following facts: In the spring of the year 1897, the firm of Nixon & Danforth, of Augusta, advanced to Tutson certain supplies, on the agreement of the plaintiff, that Tutson would pay them out of the first cotton that was made in the premises. In accordance with this agreement, Tutson shipped eight bales of cotton, grown on the place, and covered by the plaintiff's lien, to said Nixon & Danforth, with the knowledge and consent of plaintiff. This cotton was sold by Nixon & Danforth, and after satisfying their claim, there was a balance, which was credited on the plaintiff's mortgage. The mule sold by Hankinson had also been returned, and a credit of $85 allowed Tutson, that being the original price agreed upon. After these credits, there was still a balance due Hankinson of $131. As already noted, the defendant's contention is the proceeds of this cotton should have been applied to this debt, and that the plaintiff, having consented for it to be applied to the debt of Nixon & Danforth, is now estopped from claiming damages from this defendant, by reason of the seizure of the three bales of cotton, or by reason of the levy of the crops in the field, that were not gathered and were wasted. I fail to see where the principle of estoppel should be invoked. Hankinson simply released his lien on a part of his security, knowing possibly that he was amply secured; why, then, should this act on his part make his lien on that property which had not been released, junior in rank to the lien of the defendant? There was no privity between the plain-

tiff and the defendant, no obligation on the plaintiff to aid the defendant, whose lien was junior to that of the plaintiff. Suppose, on the other hand, the plaintiff had failed to agree to release his lien on said cotton, but had sold it and applied enough of the proceeds to the payment of his debt, and turned the overplus over to Tutson, and Tutson had paid it on the account of Nixon & Danforth, would it be contended that defendant could call upon plaintiff, to reimburse him the amount so paid? I think not.

"It is, therefore, ordered, that the plea of estoppel be overruled.

"The next question, then, is, to what extent has the plaintiff been damaged by the acts of the defendant? Certainly to the value of three bales of cotton illegally appropriated by the defendant, which he sold at a net profit of $68.32, as shown by statement of sales; and to the value of the crop in the field to the extent that his lien of the same has been impaired or destroyed. The evidence establishes the fact that the crop destroyed in the field was worth at least $75.

"I conclude, therefore, as propositions of law, that the plaintiff's mortgage and his landlord's lien is superior to the lien of the defendant. That the mortgage was a lien on the crop grown on the premises that year, and was sufficient to pledge the same as a security to pay the debt of the plaintiff. That the plaintiff has been damaged to the extent of the debt remaining unpaid, to wit: $129.57. A statement of which is as follows: Principal on note and mortgage, $266.06; interest from 10 February, 1897, to 2 March, 1898, $22.53—$288.59. Credits—By mule returned, $85.00; by proceeds of cotton, $74.02—$159.02. Amount due March 2, 1898, $129.57.

"It is, therefore, adjudged, that the plaintiff have judgment against the defendant for the sum of $129.57."

From this decree the defendant appeals.

*Messrs. Hendersons,* for appellant, cite: *Agricultural lien*

*need only be indexed and filed:* Rev. Stat., 2516, 818, 2514, 2463. *No such delivery of cotton to plaintiff as would amount to a transfer of title:* Story on Sales, secs. 296b, 298a, 298b. *Defendant not liable for crops which he never received:* 53 S. C., 137; 45 S. C., 642.

*Messrs. G. W. Croft & Son* and *P. A. Emanuel,* contra, cite: *This is a law case, and findings by Judge are final:* 41 S. C., 363; 42 S. C., 138. *Landlord has preferred lien to all others:* 19 Stat., 146; 36 S. C., 274, 497; 18 S. C., 179. *After plaintiff had taken the cotton under his mortgage, there was no title left in tenant for defendant to acquire by seizure under his lien:* 10 S. C., 452; 14 S. C., 112; 18 S. C., 157; 20 S. E. R., 759; 26 S. C., 110, 331; 28 S. C., 101. *Can commissioner of deeds of Georgia probate South Carolina lien?* 22 S. C., 332; 21 S. C., 268; 33 S. C., 436; 39 S. C., 84. *Senior mortgagee is not liable to junior mortgagee for waste of goods by mortgagor:* 37 S. C., 568. *As to damages for impairment of value of lien:* 45 S. C., 648; 53 S. C., 137.

July 22, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. To understand the questions presented by this appeal, a brief recital of the facts upon which the action is bottomed should be made. It seems that on the 10th day of February, 1897, one Preston Tutson was indebted to the plaintiff, Frank H. Hankinson, in and for the sum of $266.06, and on the same day, in order to secure the payment of said sum on or before the 15th day of October, 1897, the said Preston Tutson executed a chattel mortgage wherein he pledged to said plaintiff, Frank H. Hankinson, the following goods, chattels, crops and stock, to wit: "All my household and kitchen furniture, books, pictures, jewelry, musical instruments, saddles, buggy and wagon harness, farming tools, one grey mare mule, named Pet, and one horse black mule, named Logan, and all other goods,

chattels, crops and stock of every kind which I now have or may hereafter in any manner acquire before the payment of this note.   And this debt is made and money obtained upon the positive representation that the above property is absolutely mine, and that no one has any claim whatever on it, and all the crop or crops planted by me or by others for me, or in which I am or may be in [any] way interested during the year 1897 on any place whatever, and especially on the Hankinson Old Mill place, in Hammond township, Aiken County and State of South Carolina, and bounded by lands of Dr. J. M. Galphin, Ramsey and Pat. Calhoun and others, and also on Mrs. Ida Calhoun's place, in Hammond township, Aiken County and State of South Carolina, bounded by lands of Dr. Galphin, Ramsey and others.   To have and to hold all and singular the said goods, chattels, crops and stock unto the said F. H. Hankinson and his assigns forever * * * *And provided, further,* That the mortgagor may retain possession of said goods and chattels until default shall be made in the payment of said note * * *" This chattel mortgage was duly *recorded* in the office of the register of mesne conveyance for Aiken County, S. C., on the 17th day of February, 1897.

On the 12th day of March, 1897, the defendant, Luther H. Hankinson, agreed to and with the said Preston Tutson to advance to said Tutson two tons of commercial fertilizer of the value of $40, to cultivate a crop during the year 1897 on the plantation known as F. H. Hankinson's, situate in the county and State aforesaid, and as a security for said advance the said Preston Tutson gave to the defendant, Luther H. Hankinson, a lien on said Preston Tutson's crop to be raised on said plantation during said year (1897).   This lien was duly *filed and indexed* on the 8th April, 1897, in the office of the register of mesne conveyance for Aiken County, S. C.

Some time in the spring of 1897, the said Preston Tutson received $130 and odd cents of supplies from the firm of Nixon & Goforth, with a verbal agreement of the plaintiff,

Frank H. Hankinson, that he would postpone his lien until
Preston Tutson paid that firm for said supplies, but no pa-
pers were signed by Preston Tutson nor by Frank Han-
kinson.   All these things were arranged with said firm of
Nixon & Danforth without the knowledge or consent of the
defendant, Luther H. Hankinson.   In the fall of the year
1897, without the knowledge or consent of the defendant,
Luther H. Hankinson, the said Frank H. Hankinson and
Preston Tutson shipped eight bales of cotton to the firm of
Nixon & Danforth, who sold the same and from the pro-
ceeds of such sale paid their account for over $130, and the
balance—some $74.02—was paid to Frank H. Hankinson
and credited upon his note and mortgage.   The said Frank
H. Hankinson went to the house he had rented for the year
1897 to said Preston Tutson and saw that said Tutson had
gathered and placed in his, Tutson's, barn about three bales
of cotton in the seed.   He claims that Tutson told him on
that occasion that he might take said three bales, but he did
not remove the same; it was not weighed or marked.   On
the 3d November, 1897, the defendant, Luther H. Hankin-
son, set on foot proceedings in attachment under the agri-
cultural lien law before and through J. W. Dunbar, Esq., a
magistrate for Hammond township, in Aiken County.   The
warrant to seize the crop of Preston Tutson was issued on
that day and placed in the hands of one Rountree for execu-
tion.   He seized, on 5 November, 1897, the three bales of
cotton in the barn of said Tutson and nailed up the door.
Three persons made the appraisement, viz: the constable, T.
D. Rountree, J. P. Hankinson and E. W. McElmurray, as
appraisers, which appraisement showed the following crops
levied upon: "Cotton in barn, 1,200 pounds, value $35; cot-
ton in house, 1,000 pounds, value $25; sugar cane, value
$8; cotton in field, not open, value $10; cotton in field, open,
250 pounds, value $5—total amount, $73."   The three bales
of cotton, after about four weeks' delay, were with the con-
sent of Preston Tutson removed by Luther H. Hankinson,
hauled to his gin and there ginned.   In its removal the said

Tutson accompanied the wagons, carrying his bagging and ties, which were placed about the cotton. The cotton was carried to the city of Augusta, Ga., and there sold. It realized $68.32. This sum paid the expenses of the magistrate and constable, expense of ginning and carrying to market, leaving, $40.40 paid to Luther H. Hankinson on his lien, and the balance, $2 and some odd cents, was paid to Preston Tutson. The sugar cane and the cotton in the field were ungathered except 400 or 500 pounds picked by Tutson and retained by him. Under these circumstances the plaintiff brought suit against Luther H. Hankinson to recover the sum of $131 damages. In his complaint he alleges that the consideration of his note, given by Preston Tutson for $266.06, was for rent, $100, and the further sum of $166.07, "for advances and supplies" which the plaintiff had advanced to him to make his crop. The plaintiff allowed Preston Tutson credit for $85 for the mule, "Pet," taken back, and the further sum of $70, received through the sale of the eight bales of cotton sold by Nixon & Danforth; thus leaving $131.06 still due, which the defendant was liable to pay.

The defendant denied all these facts. Then stated in his answer that any and all claims held by the plaintiff against the said Preston Tutson had been paid. That he seized the cotton of Tutson under an agricultural lien upon proper proceedings therefor, with the consent of said Tutson. And that plaintiff is estopped from any legal claim against defendant by reason of his having voluntarily postponed his lien on eight bales of cotton to Nixon & Danforth, of Augusta, Ga., who received $130 therefrom. The cause came on before Judge Ernest Gary upon the pleadings and the testimony taken before a referee. The decree of the Circuit Judge should be set out in the report of the cause. From this decree the defendant has appealed on the following grounds:

"1st. Because it is respectfully submitted that his Honor erred in not considering and not passing upon the distinct issue raised in the answer that the claim of plaintiff, Frank

H. Hankinson, against Preston Tutson was paid, and in not decreeing, as matter of fact, that said claim was paid, and hence that the plaintiff's cause of action failed.

"2d. Because, it is respectfully submitted, his Honor erred in finding as matter of law, the fact that Preston Tutson delivered three bales of cotton in question to plaintiff as part payment of the rent and mortgage debt due him, whereas he should have found as a matter of law, under the admitted testimony on the part of the plaintiff, that there was no such actual delivery of the cotton to the plaintiff, and that no title thereto vested in the plaintiff, and that he could not maintain the action in question.

"3d. Because, it is submitted respectfully, his Honor erred in finding that the defendant, Luther Hankinson, did anything whatsoever towards the impairment of the alleged lien of the plaintiff on the crops which were in the field, and should have found to the contrary, that the defendant never touched the same or removed the same, but that they were taken in possession by an officer of the law, under legal proceedings, which officer of the law did not prohibit Tutson from gathering his crop, and that the defendant in no way received the same or interfered with the same, and hence, as the law took charge of it, Hankinson should not be held responsible.

"4th. Because, it is submitted respectfully, his Honor should have found that as to the three bales of cotton in question, the same was turned over to the defendant, Hankinson, by the consent of Tutson, and that Hankinson had a prior lien thereon, the same never having been delivered to the plaintiff, and no title thereto ever having accrued to the plaintiff.

"5th. That his Honor, it is respectfully submitted, erred in finding that the plaintiff was not estopped from asserting any claim to the property in question by his actively consenting and permitting Tutson, the common debtor, to ship away to Augusta, Ga., enough cotton to pay his said mortgage debt, and that he should have held that said conduct on the

part of the plaintiff in equity and good conscience estopped him from asserting said claim.

"6th. Because, it is submitted respectfully, his Honor erred in treating the action under the amended complaint as an action brought for damages for the impairment of the security of the plaintiff, and in rendering any decree under such view of the case, as he failed to find any actual notice on the part of the defendant of the existence of the plaintiff's security, and that he should have treated the case simply as an action of trespass upon the alleged property of the plaintiff; and so treating it he should have found that there was no proof that the plaintiff was the owner of the property in question, no title thereto ever having been acquired by the plaintiff, as matter of law."

As to the first exception, it must be sustained, for the Circuit Judge fails to pass upon the issue of payment which was directly tendered in the answer. It seems to us, however, that by indirection the Circuit Judge has passed upon this question when he in effect held that the plaintiff's debt due to him by Preston Tutson amounted to about $286, subject to the two credits allowed by the plaintiff in his complaint. We sustain this exception, in regard to the error of the Circuit Judge in regard to the payment, for these reasons. It was the duty of the plaintiff to establish the allegations in his complaint that his debt of $266.06 arose from $100 due him by Tutson for rent for the year 1897, and $166.06 for supplies and advances furnished by him to Tutson in the year 1897. This he failed to do, for in his testimony he admitted that he included in this $266.06 as a part thereof, $85 for a mule, "Pet," sold to Tutson, and the balance due him by Tutson for the mule, "Logan," which originally was $150, with a credit of $65, thus leaving only $85. The three sums, $100 for rent, $85 for the mule, Pet, and $85 balance for the mule, Logan, aggregated $270, which last amount is $3.94 in excess of the note for $266.06. No where in the plaintiff's testimony could he tell what amount he had advanced in supplies to

Tutson.   It has long been settled law in this State that a mule or horse cannot be included in an agricultural lien, under the term advances or supplies, with which to make a crop.   See the case of *McCollough* v. *Kibler,* 5 S. C., 468. So, $170, included in plaintiff's note and mortgage, is not a debt, so far as any lien in Tutson's crops for 1897 is concerned.   The rent, $100, would be good without a chattel mortgage or agricultural lien, but on this was paid to plaintiff $70, from the proceeds of the eight bales of cotton of Tutson, which were sold by .Nixon & Danforth in Augusta, Ga., about 15th October, 1897, thus leaving only $30 due upon the rent, and this was paid, as we will hereafter show.

We do not think it necessary to pass on exception second. Nor do we regard it necessary to pass on exception third.

We will treat in effect of the fourth, fifth and sixth exceptions.   We regard the plaintiff as holding a lien for rent for $100, which was enforcible under the law regulating advances for agricultural purposes, and that such lien was the first lien on the crops of Preston Tutson for the year 1897.   We regard the defendant as holding a valid lien for $40 for the guano furnished for the crops of Tutson during the year 1897, and this lien of defendant is next in priority to that for $100, as rent held by plaintiff. · We hold that a person holding a lien prior in point of time and dignity cannot consent for the crops covered by his prior lien to be applied to the claim of a third person, and thus defeat the lien next in order to his own prior lien.  This position does not affect the question passed upon in *Moore* v. *Bynum,* 10 S. C., 460, for there the question was presented between the mortgagor and mortgagee, which is not like the parties to the present contention.   If the question here was made between the prior lienee, F. H. Hankinson, on the one side, and the lienor, Preston Tutson, on the other side, the case would be like that presented in *Moore* v. *Bynum, supra.*   Here the question is between the two lienees—the two Hankinsons.   This Court held, in the case

of *Frost & Co.* v. *Weathersbee,* 23 S. C., at pages 368 and 369, that the lienors, Weathersbee & Co., could not direct payment of the debt for which one A. J. Weathersbee had become guarantor out of cotton which had been purchased, by the firm of Weathersbee & Co., with funds supplied by the same firm of E. H. Frost & Co., on an agreement for shipment of said cotton so shipped by Weathersbee & Co. We do not pretend that the same question as presented in the case at bar was presented in *Frost & Co.* v. *Weathersbee, supra,* but the principle is very nearly the same. In the case at bar the testimony shows that Luther H. Hankinson's lien for $40 was given on the 13th March, 1897, and was indexed the 7th April, 1897. Therefore, when the senior lienee, F. H. Hankinson, attempted, *by parol,* to give the firm of Nixon & Danforth virtually a prior lien on Tutson's cotton, and afterwards, without the consent or even the knowledge of Luther H. Hankinson, actually applied $130 from the eight bales of Tutson's cotton to the payment of the claim of Nixon & Danforth, in exoneration of the claim of said firm of Nixon & Danforth against the said Frank H. Hankinson, as the guarantor of Tutson, the said Frank H. Hankinson must give credit on his lien for rent, as far as was necessary to extinguish his claim for rent against Tutson, so far as the interests and rights of the defendant, Luther H. Hankinson, were concerned. We hold that, so far as Luther H. Hankinson is concerned, the transaction whereby $130 of Tutson's crops were applied by the plaintiff to the payment of the unsecured claim of Nixon & Danforth, operated as a payment on the rent due to the plaintiff, as senior lienee, and the balance was only $30 and interest. This being so, the Circuit Judge was in error; he should have dismissed the plaintiff's complaint.

It is the judgment of this Court, that the judgment of the Circuit Court should be reversed, and the action remitted to the Circuit Court, with directions to formulate a decree dismissing the plaintiff's complaint.