16209

GAUD v. WALKER ET AL.
(53 S. E. (2d) 316)

454

*Messrs. Stoney & Crosland,* of Charleston, *for Petitioner,* cite:

*Messrs. Lionel K. Legge and R. McC. Figg, Jr.,* of Charleston, *for Respondent,* cite:

458

April 29, 1949.

Oxner, Justice.

Petitioner, a taxpayer and qualified elector of Charleston County, seeks in this action, brought by permission in the original jurisdiction of this Court, to have declared invalid, as being in conflict with various provisions of the Constitution of South Carolina, Act No. 764 of the 1948 Acts of the General Assembly, April 9, 1948, 45 St. at L. 1873, entitled: "An Act to provide for a system of municipal government in and for Charleston County under either of two alternative plans; to create, under either of said plans, a County Council for said county, and to prescribe its duties, powers and functions; and to provide for the holding of an election to determine which, if either, of said plans shall become effective."

The Act provided for the holding of a special election in Charleston County in September, 1948, at which the qualified

electors of that county should determine, by a majority vote, whether the system of county government designated as Plan A or that designated as Plan B, or neither, should become effective. This election was duly held and resulted in the adoption of Plan A. Thereafter, in accordance with the terms of the Act, a County Council of seven members was elected in the general election held in November, 1948. The members so elected qualified on January 4, 1949, and entered upon the performance of their duties. They are the respondents in this action.

Plan A provides for a system of municipal government for Charleston County to be administered by a County Council therein created, consisting of seven members. Charleston County is divided into five geographical areas for purposes of representation on said Council. Three members are elected by the qualified electors of the City of Charleston and one by the qualified electors of each of the other four areas. The term of office is for a period of four years. The Council is required to select one of its number as Chairman, who serves ex officio as County Supervisor. Regular meetings are to be held and a record kept of all proceedings. Any ordinance relating to the levying of taxes, the appropriation of money, or the incurring of bonded indebtedness is required to be read at three regular meetings of the Council. Each ordinance or resolution must be published in full in a newspaper at least five days before becoming effective.

Among other powers vested in the County Council, it is authorized: (a) To exercise the power of eminent domain; (b) to make appropriations and levy taxes for any purpose specified in Article 10, Section 6 of the Constitution; (c) to allocate and disburse all funds accruing to Charleston County from whatever source derived; (d) to "provide within the County special services such as refuse or garbage collection and disposal facilities, and to collect service charges from the persons benefited which are at least sufficient to cover the expenses of providing such services"; (e) to "incur indebt-

edness in anticipation of the collection of taxes which have been levied"; (f) to issue general obligation county bonds for any of the purposes enumerated in Article 10, Section 6 of the Constitution, but the question of·issuing such bonds must be submitted to the qualified electors of the County; (g) to "regulate, control and provide for the construction, maintenance, operation and use of public streets, roads, bridges, sidewalks, drains, Court Houses, jails, buildings, prison farms, and other public improvements and facilities"; (h) to "prescribe methods of accounting for County officers and departments"; (i) to "enact reasonable ordinances and promulgate reasonable regulations for the preservation or promotion of public health, safety, welfare and morals within the County, and to prescribe penalties for violations thereof not exceeding a fine of One Hundred ($100.00) Dollars or imprisonment for thirty days"; (j) to "supervise and regulate the various departments of the County, except that the duties and functions now provided by law for the offices of the Auditor, Treasurer, Sheriff, Clerk of Court, Probate Judge, Master, Register of Mesne Conveyance, Coroner and Superintendent of Education shall not be altered, and the power of such officers to designate the personnel made available to them shall not be infringed"; (k) to "make provision for the conduct of County affairs; to provide for the appointment of a County Manager to serve as the chief administrative officer for local affairs, carry out the policies and directions of the County Council, direct and coordinate all administrative activities, direct the development of a budget for submission to the County Council, and control the expenditure of appropriated funds; to create such other agencies and departments as may be deemed advisable, and to prescribe their duties and functions; and to alter or transfer the duties and functions of existing offices, agencies or departments"; (l) to "establish policies affecting the selection, appointment, compensation, dismissal and other matters in the control of the administrative employees of the County government"; (m) to "exercise all the powers vested by law in

the County Board of Commissioners"; (n) to "exercise all the powers vested by Act 681 of the Acts of the General Assembly of South Carolina of 1942 (the County Planning Act) in the County Board of Commissioners"; (o) to "exercise all the powers vested by law in the Sanitary and Drainage Commission for Charleston County"; (p) to exercise all the powers vested by law in the County Police Commission for Charleston County"; (q) to "exercise all the powers vested by Sub-section 3 (b) and Sub-sections 4 through 11, inclusive, of Section 4077 of the Code of 1942, in the Charleston County Public Welfare Board"; and (r) to "exercise all the powers vested by law in the Charleston County Board of Highway Beautification".

It is further provided that nothing contained in Plan A "shall be construed to abridge or affect the powers of any municipality or incorporated township or political subdivision within the County".

We have not mentioned certain relatively unimportant powers vested in the County Council which in other counties are generally exercised by the supervisor or board of county commissioners. The foregoing synopsis of Plan A includes all that is necessary for a proper understanding of the questions to be determined.

Plan B, which was rejected at the election held pursuant to the terms of the Act, also provided for the creation of a County Council but the powers and duties vested in it under the terms of this plan were not so far reaching and in the main were of an administrative nature. Under Plan B, the Council was not empowered to make appropriations, levy taxes or issue bonds, and was given no police power except as to the control of motor vehicular traffic.

We approach the consideration of the various constitutional grounds upon which this legislation is challenged with the following well settled principles in mind: "The supreme legislative power of the State is vested

in the General Assembly; the provisions of our State Constitution are not a grant but a limitation of legislative power, so that the General Assembly may enact any law not expressly, or by clear implication, prohibited by the State or Federal Constitution; a statute will, if possible, be construed so as to render it valid; every presumption will be made in favor of the constitutionality of a legislative enactment; and a statute will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution." *Moseley et al. v. Welch et al.,* 209 S. C. 19, 39 S. E. (2d) 133, 137.

The major questions to be determined relate to petitioner's contention that Plan A involves in several particulars an invalid delegation of legislative power. Before discussing this phase of the matter, it may not be amiss to call attention to the plenary power of the Legislature, in the absence of constitutional restrictions, to provide for municipal government. In *Lillard v. Melton et al.,* 103 S. C. 10, 87 S. E. 421, 428, the Court quoted with approval the following: "A 'municipal corporation, in the exercise of all its duties, including those most strictly local or internal, is but a department of the state. The Legislature may give it all the powers such a being is capable of receiving, making it a miniature state within its locality; or it may strip it of every power, leaving it a corporation in name only; and it may create and recreate these changes as often as it chooses, or it may itself exercise directly within the locality any or all the powers usually committed to a municipality. * * * The people are the recognized source of all authority, state and municipal; and to this authority it must come at last.' " As stated in 11 Am. Jur., Constitutional Law, Section 223, page 934: "It is a well settled rule, supported with practical unanimity by the authorities, that the general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope."

Although "the county, as a unit of government, is older in point of time than either the state or the town", 20 C. J. S., Counties, § 2, page 757, and "had its origin in England, preceding the organization of the kingdom itself", 14 Am. Jur., page 185, its attributes and functions differ widely in the various states. In some it is regarded as a mere agency or arm of the state government and not as an independent governmental entity, while in other states the constitutions confer on counties a large measure of self-government, including legislative powers similar to those usually vested in chartered towns and cities, thereby making an autonomous, self-governing, political entity with respect to local affairs.

Prior to the Constitution of 1868, the government of South Carolina was rather centralized and the affairs of the counties and judicial districts were largely managed and controlled by the General Assembly. In that Constitution it was declared, Article 2, Section 3, that the judicial districts should thereafter be designated as counties and that each county should constitute one election district. Section 19 of Article 4 was as follows: "The qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, which shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties: Provided, That in all cases there shall be the right of appeal to the State Courts." This section was repealed in 1890. 20 Statutes, page 649. Article 9, Section 8 provided that "the corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

Under our present Constitution, adopted in 1895, it is stated, Article 7, Section 9, that "each County shall constitute one election district, and shall be a body politic and corporate." Under Article 7, Section 11, the General Assembly is authorized to "make special provision for municipal government", and it is declared in Article 10, Section 5, that "the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same". It will be observed that this provision is taken verbatim from Article 9, Section 8 of the Constitution of 1868. However, no provision similar to Section 19, Article 4, of the Constitution of 1868 is found in that of 1895. This omission was probably due to political conditions existing during Reconstruction Days, which demonstrated the need of restoring to the General Assembly plenary power over the affairs of the counties.

In *Lillard v. Melton et al., supra,* the Court pointed out that there was no provision in the Constitution of 1895 establishing "a uniform or definite form of county government", and observed that "in this particular the present Constitution differs materially from that of 1868 (Section 19, article 4)."

In discussing the above mentioned sections of the Constitution of 1895, the Court in *Battle et al. v. Willcox et al.,* 128 S. C. 500, 122 S. E. 516, 517, said: "The corporate purposes of the county as such are not expressly defined and set forth either by the Constitution or by statute. That the object or purpose of constituting townships bodies politic and corporate is essentially identical in character with that contemplated in making counties bodies politic and corporate would seem to be obvious. That corporate purpose, broadly speaking, is the object sought to be attained by the creation of all subordinate governmental agencies or municipal cor-

porations, *viz.*, the promotion of the public good through the exercise by these agenoies or bodies politic of such powers as may be delegated to them by competent authority."

In the light of this historical and constitutional background, we shall now consider the various grounds upon which this legislation is assailed.

Does the power to make appropriations, levy taxes, incur indebtedness and issue bonds constitute an invalid delegation of legislative authority to the County Council in violation of Article 3, Section 1 of the Constitution of 1895, which vests the legislative power of the State in the General Assembly? Respondents assert that such authority may be delegated under Article 7, Section 11, and Article 10, Section 5 of the Constitution of 1895.

In *State ex rel: Brown v. Chester & L. N. G. R. Co.*, 13 S. C. 290, decided in 1880, the Court, after stating that it was "competent for the Legislature to confer upon the people of a county power to incur obligations binding upon them, as a community, unless forbidden by the Constitution", said that it ·was reasonable to infer from the provisions of the Constitution of 1868 "that the counties were intended either to have originally or from the Legislature capacity to contract obligations necessary to the transaction of their local business." In *Duke v. County of Williamsburg*, 21 S. C. 414, the Court held that the powers conferred on county commissioners by Section 19, Article 4 of the Constitution of 1868 did not "embrace the power to levy taxes, except as such power is delegated by some act of the Legislature", and that in the absence of statutory authority, the county commissioners of a county were not empowered to issue bonds to purchase land for the purpose of establishing thereon a "poor farm."

In a concurring opinion in *Floyd et al. v. Perrin*, 30. S. C. 1, 8 S. E. 14, 18, 2 L. R. A. 242, decided in 1888, Justice McIver said: "The people, in their sovereign capacity, have,

by their constitution, entrusted the taxing power to the general assembly, and, upon a familiar principle, this power thus delegated to that body cannot be delegated by it to any subordinate agency, except by express permission of the sovereign authority. The framers of the constitution, recognizing this doctrine, provided that this high power of taxation might be delegated to certain subordinate agencies, for certain purposes, for we find it declared in Section 8, art. 9: 'The corporate authorities of counties, townships, school-districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes,' etc. It is clear, therefore, that this provision is, as is said by Waite, C. J., in *Weightman v. Clark,* 103 U. S. [256], 259 [26 L. Ed. 392], in speaking of a similar provision in the constitution of Illinois, 'a limitation on the power of the legislature to authorize taxation by public corporations.' When, therefore, a question arises as to the constitutionality of an act purporting to delegate the taxing power to some subordinate agency of the government, two inquiries are presented: First. Whether such agency is one of those to which the constitution permits the taxing power to be delegated. Second. Whether the taxation purporting to be authorized is for a corporate purpose; for, as we have seen, this power can only be delegated to the corporate authorities of counties, townships, etc., and only for a corporate purpose."

In discussing the same subject in *State ex rel. Dickinson v. Neely,* 30 S. C. 587, 9 S. E. 664, 665, 3 L. R. A. 672, Justice McIver used this language: "As we understand it, the legislature has been invested by the people with unlimited power of taxation, except as restrained by some constitutional provisions; and it has also been authorized by section 8, art. 9, to delegate this high power of taxation to certain specified subordinate agencies, for certain specified purposes. It may then be said that, in respect to taxation, the legislature has been invested with two distinct classes of powers,—one which it exercises at its own sovereign will, the other which it delegates to some subordinate agency, to

be exercised by such agency at its will, within the prescribed limits. Now, while there are limitations to both of these classes of powers, the limitations are not the same. In the former the only limitation is some constitutional provision, while in the latter there may be, and usually are, additional limitations prescribed in the act delegating the power. But the more material distinction between these two classes of powers is (so far as concerns the present discussion) that in the former the only limitation imposed by the constitution, so far as the purpose for which the tax is imposed is concerned, is that it shall be a public purpose, while in the latter the limitation is that it shall also be for a corporate purpose."

In *Shelor v. Pace, Supervisor, et al.,* 151 S. C. 99, 148 S. E. 726, 731, decided under the Constitution of 1895, Justice Cothran observed: "The Legislature, in the absence of constitutional inhibition, inherently had the power, as the representative of the people, to grant counties the authority to levy taxes. Section 6 of article 10 is a restriction on that power. * * * The fact that the framers of the Constitution gave expression in section 5 of article 10 to a power inherent in the legislative body would seem to argue the intent to emphasize that power, and establish it clear of any implied limitations arising from any other section."

The power of the Legislature to authorize a county to levy taxes was also recognized by Justice Woods in the following language found in *State ex rel. People's Bank of Greenville v. Goodwin,* 81 S. C. 419, 62 S. E. 1100, 1102: "By section 5, art. 10 of the Constitution, the General Assembly was authorized to vest in the municipal authorities of a county the power to lay taxes for corporate purposes, but the General Assembly has not seen fit to confer the power on the county board of commissioners, except a limited power to lay a special tax of one mill for roads."

*Moseley et al. v. Welch et al., supra,* 209 S. C. 19, 39 S. E. (2d) 133, involved the validity of an act adopting the

"County Unit Plan" of education for Williamsburg County. The County Board of Education created under the terms of this act was authorized to fix and determine the budgets for the school districts of the County and the County Auditor was directed to levy annually a sufficient county-wide tax to meet the cost of the operation of the schools. The Board was further empowered to borrow money in anticipation of taxes and to otherwise control the fiscal operation of the schools of the county. These features of the act were upheld and the authority of the County Board of Education to levy taxes was sustained under Section 5, Article 10 of the Constitution.

In none of the cases just reviewed is there any significance attached to the fact that the word "levy" is not used in Section 5, Article 10. Indeed, it was distinctly recognized in *Southern Railway Co. v. Kay*, 62 S. C. 28, 39 S. E. 785, 786, that the power "to assess and collect taxes", given by Section 5, Article 10, includes the power to "levy" taxes. In calling attention to the fact that the word "levy" is frequently used in more than one sense and its meaning in a particular instance must be determined by the context, the Court there observed: "It is sometimes used for the purpose of conferring all the powers incident to the creation and collection of a tax, as when 'corporate authorities are vested with power to assess and collect taxes for corporate purposes.' " Similar provisions contained in other state constitutions have likewise been construed to include the power to levy taxes. *State ex rel. Salt Lake City v. Eldredge*, 27 Utah 477, 76 P. 337. *South Covington and Cincinnati Street Railway Company v. Town of Bellevue*, 105 Ky. 283, 49 S. W. 23, 57 L. R. A. 50.

Article 8, Section 6 of the Constitution provides that "the corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes", which has been held to be "a direction to the General Assembly, and not a direct and immediate conferring of the power." *Charleston Heights Co.*

*v. City Council of Charleston,* 138 S. C. 187, 136 S. E. 393, 396. Although the word "levy" is not used in this section, the authority of the General Assembly to delegate to cities and towns the power to levy taxes has never been doubted. *Carroll v. Town of York et al.,* 109 S. C. 1, 95 S. E. 121.

It would seem clear from the plain terms of Section 5, Article 10, and the construction given this section and a like section of the Constitution of 1868 by this Court over a period of almost three quarters of a century, that the General Assembly may delegate to the corporate authorities of a county the power to levy taxes. There is no more right inherent in a city than in a county to have this power bestowed upon it. Counties are included along with cities and towns in Section 5, Article 10, and no distinction is made therein between the various political subdivisions named. We are not at liberty to except counties from this provision.

Petitioner calls our attention to the following language of the Court in *Clary, County Supervisor, et al. v. Harvey, County Auditor,* 176 S. C. 512, 180 S. E. 673, 675: "It is noteworthy that more than one attempt has been made in the General Assembly to relieve that body of the annual function of enacting supply Bills for the several counties, by conferring the power to perform these duties upon the officers of the respective counties. This would mean to confer upon such county officers the power to levy, as well as to assess and collect, the taxes. These attempts thus to alter the law have invariably failed. If they possessed the power to levy such taxes as contended for by plaintiffs, there would be little need of the enactment by the Legislature of annual county supply bills."

The foregoing statement was not necessary to a decision of the controversy before the Court. The facts were these: No supply act for Cherokee County was passed during the 1935 session of the General Assembly. In an effort to remedy this situation, the County Supervisor and Board of County Commissioners sought to impose a tax levy to raise

the necessary funds for county purposes, claiming that they were authorized to do so by Section 5, Article 10 of the Constitution. The Court held that these officials were not vested with the power to levy taxes. This conclusion was eminently sound because no such power had been delegated to them by the General Assembly. In other words, Section 5, Article 10, as held in *State ex rel. People's Bank of Greenville v. Goodwin, supra,* and other cases, does not purport to grant the power to levy taxes to the political subdivisions named therein, but merely authorizes the General Assembly to confer such power upon them. The language of the Court relied upon by the petitioner must be regarded as dictum. There are also certain expressions in *Park v. Greenwood County et al.,* 174 S. C. 35, 176 S. E. 870, which might be construed as indicating a conclusion contrary to that reached herein, but the question now under discussion was not before the Court.

In addition to the power vested in the General Assembly by Article 10, Section 5, it is stated in Article 7, Section 11, that "the General Assembly may provide such system of township government as it shall think proper in any and all the Counties, and may make special provision for municipal government and for the protection of charter rights and powers of municipalities." The term "municipal government" as there used has been uniformly construed by this Court to embrace the governmental affairs of counties. *Carolina Grocery Co. v. Burnet,* 61 S. C. 205, 39 S. E. 381, 58 L. R. A. 687; *Carroll v. Town of York et al., supra; State v. Touchberry,* 121 S. C. 5, 113 S. E. 345.

In speaking of the meaning of the term "municipal government" as used in this section, the Court in *Carolina Grocery Co. v. Burnet, supra* [61 S. C. 205, 39 S. E. 385], said: "It is no doubt true that the strict application of the term 'municipal' would limit it to incorporated cities, towns, and villages; but it is also true that it may properly be used in characterizing the government

of a county or township. 'Municipal corporations are administrative agencies established for the local government of towns, cities, counties or other particular districts,' etc. Black, Const. Law, p. 374. In 15 Am. & Eng. Ency. Law, 953, it is stated: 'A "municipal corporation" in its broader sense, is a body politic, such as a state and each of the governmental subdivisions of the state, such as counties, parishes, townships, hundreds, New England "towns," and school districts, as well as cities and incorporated towns, villages, and boroughs. Every one of these is properly susceptible of the general appellation.' This broad sense seems to have been the one intended in this particular section, whatever may be said of its use in other sections or articles, for the article containing it is devoted, as shown by its title, to 'counties and county government,' whereas article 8 is devoted to the government of cities and towns."

We think it follows that the authority given to the ■ County Council to make appropriations, levy taxes, incur indebtedness and issue bonds, exercise the power of eminent domain, supervise and regulate the various departments of the County, establish policies affecting the administrative employees of the County, and to otherwise provide for the internal management of Charleston County must be sustained unless prohibited by some other section of the Constitution.

Petitioner asserts that these provisions of Plan A ■ ■ constitute a special law where a general law could be made applicable, in violation of Article 3, Section 34, Subdivisions 9 and 10. In *Carolina Grocery Co. v. Burnet, supra,* the Court stated that the authority to make special provision for municipal government, as contained in Article 7, Section 11, "was evidently framed in view of the provisions of article 3, section 34, and was intended to give the legislature a wider latitude in the making of special provisions for county and township government." The provisions of Plan A under consideration relate to the fiscal manage-

ment of the county and purely local affairs. As pointed out in *Lillard v. Melton et al., supra,* "an examination of the statutes with regard to county government and the corporate authorities thereof, their powers and duties, will disclose that widely different policies are adopted in the different counties." This indicates an opinion on the part of the General Assembly that conditions in the various counties are such as to preclude uniformity of treatment in relation to the administration of county affairs. Such a conclusion of the General Assembly is entitled to much respect and in doubtful cases should be followed. *Moseley et al. v. Welch et al., supra.*

As against the contention that the provisions of Plan A under consideration constitute special legislation in violation of Article 3, Section 34 of the Constitution, we hold that they must be sustained under the power of the General Assembly to make special provision for municipal government. *Carolina Grocery Co. v. Burnet, supra; State v. Touchberry, supra; Fooshe v. McDonald,* 82 S. C. 22, 63 S. E. 3; *Spartanburg County v. Miller,* 135 S. C. 348, 132 S. E. 673; *Craig v. Pickens County,* 189 S. C. 164, 200 S. E. 825; *Anderson et al. v. Page et al.,* 208 S. C. 146, 37 S. E. (2d) 289.

We next consider the validity of the provision authorizing the County Council "to enact reasonable ordinances and promulgate reasonable regulations for the preservation or promotion of public health, safety, welfare and morals within the County, and to prescribe penalties for the violations thereof not exceeding a fine of One Hundred ($100.00) Dollars or imprisonment for thirty days." This power has heretofore been uniformly exercised by the State except within chartered towns and municipalities. If valid, the results would be far reaching. If all other counties of the State adopted a similar plan, we would then have a State divided, in effect, into forty-six municipalities, each promulgating divers regulations or ordinances, some of which, although relating to

the same subject matter, might differ materially from those in adjoining counties.

In the decree of the Circuit Court, which this Court adopted, in *Fowler v. City of Anderson et al.*, 131 S. C. 473, 128 S. E. 410, 413, Judge Bonham, later an Associate Justice and Chief Justice of this Court, said: "In the exercise of its police power the state, it seems clear to me, may lawfully delegate to inferior units of the government such exercise of that power as appears to be for the best interest of such unit." The authority of the General Assembly to delegate the police power to towns and cities has been recognized in a number of decisions, among them: *Town Council of Summerville v. Pressly,* 33 S. C. 56, 11 S. E. 545, 8 L. R. A. 854, 26 Am. St. Rep. 659; *Douglas v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49 L. R. A., N. S., 958; *Henderson v. City of Greenwood,* 172 S. C. 16, 172 S. E. 689; *McCoy v. Town of York et al.,* 193 S. C. 390, 8 S. E. (2d) 905.

Article 8 of the Constitution is entitled, "Municipal Corporations and Police Regulations". Section 1 is as follows: "The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine." The Court said in *Askew v. Smith et al.,* 126 S. C. 159, 119 S. E. 378, 381, that "the whole trend of the article (Article 8) indicates its application to cities and towns." In *Carroll v. Town of York et al., supra* [109 S. C. 1, 95 S. E. 123], the Court said that Section 1, above quoted, "is of a peace with section 34 of the article on Legislative Department; and the object of both of them, as we have often declared, was to prohibit innumerable statutes about like subjects, to make

uniform the statute law on like subjects, and to secure a common legislative mind and action on large public interests." In accordance with the mandate of Section 1, the General Assembly has enacted general provisions applicable to all cities and towns and has classified them according to population. Title 36, Volume 4 of the 1942 Code, Sections 7224 to 7675, inclusive. The police power is expressly conferred upon cities and towns by Section 7233.

It seems clear from the foregoing that the Constitution contemplates uniformity in the government of cities and towns. In *Thomas v. Macklen et al.*, 186 S. C. 290, 195 S. E. 539, 543, the Court held unconstitutional an act providing for the incorporation of "resort communities" as municipal corporations, upon the ground that it contravened the constitutional provision prohibiting special legislation. In speaking of the effect of this legislation, the Court said: "The subject of the statute is the machinery of government—the appointment of the council in such proposed municipal corporations. It enacts for Myrtle Beach * * * a permanent and comprehensive system of municipal government not only essentially different from that established for the remainder of the state by the general statutes, but directly at variance with it."

We have just discussed rather fully the constitutional provisions relating to the government of cities and towns and the authority of the General Assembly to vest in them the police power. Respondents argue that the General Assembly may likewise vest the police power in counties. It is not necessary to determine on this appeal whether this may be done under a general statute. The precise question here is whether the police power may be delegated to the corporate authorities of one county and withheld as to all others. Obviously, in view of Section 1, Article 8 of the Constitution, no such distinction could be made between towns and cities. We are not unmindful of the fact that this article does not apply to counties, but we think

it may be properly considered in seeking a proper construction of the other sections of the Constitution. As pointed out in *Carroll v. Town of York, supra,* one of the purposes sought to be accomplished by both Article 8, Section 1, and Article 3, Section 34 was "to make uniform the statute law on like subjects". We have heretofore endeavored to point out that rational differences exist in the various counties with reference to their fiscal affairs, but no good reason appears why the police power should be exercised by the corporate authorities of one county and not by the others, particularly when comparable in size and population. Our attention has been called to no condition peculiar to Charleston County calling for the exercise of the police power by its corporate authorities. There is nothing in the Act reasonably justifying this classification.

In *Sansing v. Cherokee County Tourist Camp Board et al.,* 195 S. C. 7, 10 S. E. (2d) 157, the Court declared invalid, as contravening Article 3, Section 34 of the Constitution, an act regulating the operation of tourist camps in Cherokee County, creating a Tourist Camp Board, and providing that no person should own or operate any tourist camp without first obtaining from said Board a license to do so. In *State v. Hammond,* 66 S. C. 219, 44 S. E. 797, 800, the Court declared unconstitutional an act making it a misdemeanor to fail to remove, after forty-eight hours' notice to do so, a dam out of a running stream in certain counties. In discussing this question, the Court observed: "What possible reason can be assigned for making it a misdemeanor to so obstruct a running stream in Abbeville, while it would not be a misdemeanor to obstruct a running stream in the adjoining county of Greenwood? Why should running streams in Lancaster be so obstructed with impunity, while it is a crime to do a similar act in York or Chester?"

The effect of upholding the police power granted to the County Council would be to permit that body to enact penal ordinances of a nature which, under the

above decisions, would be unconstitutional if enacted by the General Assembly. Certainly, no such result was ever contemplated by the framers of the Constitution in authorizing the General Assembly to "make special provision for municipal government". The doctrine advanced by respondents would leave in full flower the noxious features which the constitutional inhibition against special legislation was designed to extirpate.

All sections of the Constitution must be considered together and harmonized, if possible. The authority to make special provision for municipal government must be interpreted in the light of all other provisions and restrictions contained in the Constitution and, when so construed, does not permit the General Assembly to delegate the police power to some particular county.

That portion of Plan A which purports to delegate the police power to the County Council is, for the reasons stated invalid.

The next question is the validity of the method of electing members of the County Council. Petitioner contends that in dividing the county into five areas of representation, the Act violates Article 7, Section 9 of the Constitution, which provides that "each county shall constitute one election district". Petitioner further contends that since the County Council is vested with the power to assess and collect taxes for corporate purposes, he and other taxpayers have been deprived of their rights under Article 1, Section 7, providing that no tax shall be established, fixed, laid or levied without the consent of the people or their representatives lawfully assembled, and under the due process of law and the equal protection clauses of Article 1, Section 5. Area representation is a familiar form of local representative government. The members of the city council of various municipalities are elected in this manner. The purpose is to give each and every part of the city or town representation. "Such legislative plan is modeled in accordance

with the national and state systems. It is designed to render the council a popular branch and keep it more directly in touch with the people." McQuillen, Municipal Corporation (2d) Ed., Volume 2, Section 598, page 520. There is no provision in the Constitution of this State dealing with the selection of the members of the county boards of commissioners or other corporate authorities of the counties of the State. Frequently county boards of commissioners have been appointed by the Governor upon recommendation of the various legislative delegations. Hence, the General Assembly in its plenary power may provide for their election, and in the exercise of that power, it may provide that they shall be elected either at large, or by the qualified electors of the area in which they reside and which they represent. The method of appointment is a matter to be determined by the General Assembly which is the lawfully constituted representative of the people. The cases relied on by petitioner have been carefully examined. They arose under constitutions having restrictions not found in our Constitution. We are of opinion that this feature of the Act does not violate any of the constitutional provisions above enumerated.

It is next contended that Plan A conflicts with Article 1, Section 14 of the Constitution, in that it seeks to combine in the County Council both legislative and executive functions. It has been held that this section of the Constitution refers to the government of the State and to State officers, and not to the government of municipal corporations. *City of Spartanburg v. Paris*, 85 S. C. 227, 67 S. E. 246; *City of Greenville v. Pridmore*, 86 S. 442, 68 S. E. 636, 138 Am. St. Rep. 1058. Petitioner strongly relies on *Bramlette v. Stringer et al.*, 186 S. C. 134, 195 S. E. 257. That case is not apposite. The act there held unconstitutional attempted to vest executive and administrative functions in the members of the Greenville County legislative delegation, who were state officers and members of the legislative department of the State government.

Petitioner asserts that the provision of the Act permitting the qualified electors of Charleston County to determine which, if either, of the plans should become effective constitutes an invalid delegation of legislative power. There has been quite a diversity of opinion as to the power of the legislature to pass a general statute and leave to the determination of the people of the whole State, at a general or special election held for that purpose, whether or not such statute should become effective. See annotation in 76 A. L. R., page 1053. A distinction is generally made, however, between matters of a general nature and those of local concern. The great weight of authority is to the effect that local laws may be enacted subject to the approval of the voters of the locality affected. 11 Am. Jur., Constitutional Law, Section 216. In *Cort v. Smith*, 249 App. Div. 1, 291 N. Y. S. 54, 62, affirmed in 273 N. Y. 481, 6 N. E. (2d) 414, the Court said: "It is very true that the Legislature could not delegate its power to pass a charter governing a city or county to any other body or community. It can, however, draft a charter or optional form of government for municipalities, and make its adoption dependent upon the vote of the locality." To the same effect is the following language of the Court in *Cleveland, Commissioner, v. City of Watertown et al.*, 222 N. Y. 159, 118 N. E. 500, 504, Ann. Cas. 1918E, 574: "The authorities cited, and many others that might be, establish the rule that, while the Legislature may not delegate the power to make a charter for a city or a village, it may itself do that, and then permit the electors to determine whether they will adopt it or not, and, if the same be adopted, it becomes the charter, with the same force and effect as if the Legislature had created it by an act for that specific purpose. This, in effect, is precisely what the Legislature has done for cities of the second or third class. They may have a simplified form of government, if the electors so decided, by accepting the act under consideration and adopting one of the forms of government thereby created. Outside of our own state it has frequently been determined that

acts creating or amending municipal charters or granting municipal power are not rendered unconstitutional because a provision is inserted that the voters of the territory to be affected shall have the right to determine whether the act shall become applicable to their locality." In *J. W. Hampton, Jr., & Co. v. United States,* 276 U. S. 394, 48 S. Ct. 348, 351, 72 L. Ed. 624, Chief Justice Taft said: "Congress may feel itself unable conveniently to determine exactly when its exercise of the legislative power should become effective, because dependent on future conditions, and it may leave the determination of such time to the decision of an executive, or, as often happens in matters of state legislation, it may be left to a popular vote of the residents of a district to be affected by the legislation. While in a sense one may say that such residents are exercising legislative power, it is not an exact statement, because the power has already been exercised legislatively by the body vested with that power under the Constitution, the condition of its legislation going into effect being made dependent by the Legislature on the expression of the voters of a certain district." Also, see *Sarlls, City Clerk v. State ex rel. Trimble,* 201 Ind. 88, 166 N. E. 270, 67 A. L. R. 718.

The general rules to be applied in determining a question of this kind are discussed at length in *State ex rel. Farr v. Moorer,* 152 S. C. 455, 150 S. E. 269, and *State ex rel. Coleman v. Lewis,* 181 S. C. 10, 186 S. E. 625.

It clearly appears from these decisions that either of these plans could have been submitted to the qualified electors of Charleston County. No good reason appears in principle why both could not be submitted at the same time. Under the terms of the Act, the qualified voters were permitted to choose either plan or to reject both and retain the existing system of administration of the County's affairs.

Finally, petitioner contends that the Act violates Section 17, Article 3 of the Constitution, which requires that "every Act or resolution having the force of law

shall relate to but one subject, and that shall be expressed in the title." The general purpose of the Act here under consideration is to provide a system of municipal government for Charleston County. The Act relates solely to this subject and the duties, powers and functions therein set out are all germane to the subject expressed in the title. This contention is without merit. *Verner v. Muller,* 89 S. C. 117, 71 S. E. 654; *Briggs v. Greenville County,* 137 S. C. 288, 135 S. E. 153; *State ex rel. Farr v. Moorer, supra; Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481; *Lillard v. Melton, supra.*

The subordinate question is also raised that subdivisions 17, 18, 19, 20, 21 and 22 of Article 4 of Plan A are void for uncertainty. Under these subdivisions the County Council is empowered to exercise all of the powers vested by law in a number of county agencies. The Act contains a clause providing that all acts or parts of acts inconsistent with its provisions are, in case of local or special laws, repealed, and, in the case of general laws, suspended. Section 5. It seems clear that the Act contemplates that the powers given to these agencies shall remain in full force and effect but shall be exercised by the County Council.

It follows from the foregoing conclusion that all of Plan A is constitutional except subdivision 13 of Article 4 which purports to delegate the police power to the County Council. When this portion of the Act is eliminated, that which remains is capable of being executed in accordance with the legislative intent, wholly independent of that which has been rjected.

It may be said in conclusion that the system of county government which we have upheld is apparently without precedent in this State. The General Assembly has thought highly enough of the plan to make it possible for the people of Charleston County to try the experiment, and the people of that county, having peculiar knowledge of local needs and problems, have, by a majority vote, signified their

desire to put it to a test. This decision must stand unless the Act clearly contravenes some mandate of the fundamental law of this State and, except in one particular, we have found that it does not. Our duty is to declare the law, not to make it.

The judgment of this Court is that respondents are enjoined from exercising any of the powers conferred by Subdivision 13, Article 4 of Plan A, but in other respects the petition is dismissed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.