16429

BEACHAM v. GREENVILLE COUNTY

(62 S. E. (2d) 92)

*Messrs. Leatherwood, Walker & Mann,* of Greenville, *for Appellant,*

*Messrs. J. D. Todd, Jr.,* and *Alfred F. Burgess,* of Greenville, *for Respondent,*

November 14, 1950.

STUKES, Justice.

The Board of Commissioners of Greenville County were desirous of enlarging and improving the county courthouse and engaged appellant as architect. He prepared a contract which is said to be usual in form in such cases. It was executed Nov. 12, 1945, by appellant who was styled "Architect" and by the chairman for the board and in behalf of the county which was styled "Owner." The contract did not specify the extent of the work and referred to it as to "remodel"; it was also silent as to cost. The fee of appellant was fixed at six per cent of the cost, $3,600.00 of which

should be paid for the preliminary plans within fifteen days after execution of the contract.

At the shortly ensuing session, 1946, of the General Assembly there was enacted, quoting the title: "An Act To Authorize The County Board Of Commissioners Of Greenville County To Contract For The Enlarging, Remodelling And Repairing Of The Greenville County Court House, And To Appropriate Funds For The Payment Thereof." 44 Stat. 2142, approved March 25, 1946. It is seen by reference to the act that it authorized the work and empowered the board to contract therefor after receipt of competitive bids, and further provided as follows concerning the architect's preliminary plans: "The contract heretofore entered into between said Board and the firm of Beacham and Beacham, Architects, is hereby ratified and the said Board is hereby authorized and directed to have the said building enlarged, remodeled and repaired in keeping with the plans heretofore submitted by the said Architects."

Sections 3 and 4 of the act appropriated for the purpose $346,000.00 from a special fund and, if that amount be found insufficient, a further sum of $54,000.00 from the general fund of the county. Thus $400,000.00 in all was appropriated for the enlargement, etc., of the courthouse.

Appellant, having been paid $3,600.00 as stipulated, proceeded to the completion of the plans which took him until July 1947, and he meanwhile reported to the board that he thought the work could be done for about $400,000.00 but when the bids were received, the lowest was $863,000.00. Thereupon the board abandoned the project and no use was made of the plans.

Basing the amount upon the contract percentage of the low bid and crediting the payment of $3,600.00, appellant brought this action on the contract against the county for the sum of $31,092.60, claim for which the board had rejected. At the conclusion of appellant's evidence upon trial

the court granted respondent's motion for nonsuit and this appeal followed.

Appellant would largely ignore the pertinent legislative act of 1946, above, and relies in argument upon section 1955 of the Code of 1942, which authorizes and requires county boards to make alterations and additions to their respective courthouses, and upon section 4442 which creates the Greenville County Board and prescribes its powers and duties. Nothing is found in either, however, which tends to make the Greenville board independent of the legislature in such matters, as appellant would apparently have it.

Against appellant's contended construction of the statutes just cited, respondent invokes section 3073, which is a general law, as follows: "It shall be unlawful for any public officer, state or county, authorized by law to so contract, to enter into or contract, for any purpose whatsoever, in a sum in excess of the tax levied, or the amount appropriated for the accomplishment of such purpose." Not cited but also pertinent is Art. X, sec. 9, of the Constitution of 1895: "Money shall be drawn from the Treasury only in pursuance of appropriations made by law."

Respondent pleaded in defense of the alleged liability that the purported contract upon which the suit was brought was void for lack of legislative authority and that the subsequent ratifying act of 1946, *supra,* limited the project to the sum appropriated; and further as follows, quoting from the answer:

"Further answering the complaint of the plaintiff, the defendant alleges that only the sum of Four Hundred Thousand and no/100 ($400,000.00) Dollars was available for the proposed enlargement, remodelling and repairing of the Greenville County Court House and that only that sum was appropriated for doing said work. That the project was limited to the expenditure of that sum of money and the plaintiff was well aware of the limitation on the sum available to do this work. That the Act of the General Assembly

ratifying plaintiff's contract appropriated only Four Hundred Thousand and no/100 ($400,000.00) Dollars for doing this work. That plaintiff was employed to furnish plans, specifications, working drawings and engineering plans for enlarging, remodelling and repairing the Greenville County Court House that could be done within the sum available, namely, Four Hundred Thousand and no/100 ($400,000-.00) Dollars.

"That plaintiff assured defendant that the proposed work could be done within the sum appropriated, namely, Four Hundred Thousand and no/100 ($400,000.00) Dollars, but when bids were received the lowest bid was Eight Hundred Sixty-three Thousand and no/100 ($863,000.00) Dollars. That plaintiff utterly and completely failed to perform his contract in that the plans as furnished called for a building, construction cost of which was more than double the limitation set and was more than double the sum available to do the work.

"That the plans, specifications, working drawings and engineering plans furnished by plaintiff, since they more than doubled the sum available, and the limitation set, were absolutely · worthless to defendant and the project was abandoned."

The order of nonsuit was granted upon the grounds that Code Section 3073, *supra,* forbade the board from legally contracting liability for an expenditure prior to legislative authorization and appropriation, so the purported contract was void. It was also held that the legislative ratification (the Act of 1946) confined the authority of the board to an expenditure for the purpose of $400,000.00. This was found to be the legislative intent and we do not think that there is any room for argument thereabout. The General Assembly has not delegated legislative powers to the Greenville board as it has in the case of Charleston. *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316.

The ruling under review concluded as follows: "In interpreting the powers of the County Board of Commissioners and interpreting this Act, there is no authority whatsoever to base the remuneration of these architects on that bid of $863,000.00. The plans and specifications as furnished by the architect would be of no value whatsover to the County because of the fact that it can't be built. Those plans can't be carried out for the amount of the appropriation, of which I have already said that the intent and purpose of the Act was to limit the cost to Four Hundred Thousand ($400,-000.00) Dollars; and, therefore, the fees could not be based on a bid carrying $863,000.00. And it can't be based on $400,000.00 appropriated for the reason that the plans are worthless to the County."

There was another compelling reason for nonsuit which was encompassed within respondent's grounds. It is the general law concerning contracts with architects. Apparently we have no precedent in our reports but the decisions from other jurisdictions are conveniently collected in an annotation in 127 A. L. R. 410. The following presently applicable generalizations of the editor are taken from pages 411 and 413:

"Where an architect is employed to prepare plans for a building to cost not more than a certain sum, or on condition that the building can be erected for a certain sum, it has usually been held that the architect is not entitled to compensation unless the building can be constructed for the stipulated amount."

"Where an architect is employed by the state or by a political subdivision thereof, it has generally been held that he may not recover compensation for preparing plans for a structure which will cost more to erect than such governmental unit is permitted by law to expend for the purpose."

The rule first quoted has been properly subjected to modification where the cost agreed upon by owner and architect

was not substantially exceeded. 127 A. L. R. 412. This modification would, of course, not care for the very wide variance, over 100%, in the present instance.

The contract sued upon in this action was silent with respect to the cost of the work and there was no objection to the competency of appellant's testimony on cross examination that in his discussions with the Board he estimated the cost at about $400,000.00 under the existing costs of construction, and on redirect examination he said that was before the contract was signed. Appellant was charged with knowledge of the contents of the legislative act of 1946 and he also admitted actual knowledge. The following is a portion of his relevant testimony:

"Q. Did you ever know how much was appropriated for the remodelling of the Court House? A. I saw it in the paper when it was published.

"Q. And that was shortly after the Act was passed, wasn't it, some time in March of '46? A. I would think so."

What has been said answers adversely to him the ██ questions argued by appellant, except the last, and that also, inferentially. By it he contends that the county is estopped to deny liability under the purported contract. The record is clear that the point was not made or adjudicated in the lower court, whereby it is unavailable on appeal. However, if it were, and the doctrine otherwise applicable to this case, it was not supported by the evidence. There was no misleading of the appellant; on the contrary, he was charged with knowledge of the limited power and authority of the board, had actual knowledge of their intention that the project should cost $400,000.00 and, finally, he had actual and constructive notice of the amount of the legislative appropriation for the project, which was contained in the ratifying Act of 1946.

The exceptions are overruled and the judgment of nonsuit affirmed.

BAKER, C. J., TAYLOR, J., and L. D. LIDE, A. A. J., concur.

OXNER, J., not participating.